**Tammy Lou DURBIN (Now Lepley), Appellant,**

v.

**Mark Leslie DURBIN, Respondent.**

No. WD 67403.

Missouri Court of Appeals, Western District.

June 19, 2007.

Jack A. Cochran, Blue Springs, MO, for appellant.

Mark Leslie Durbin, Adrian, MO, pro se.

Before HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS, Judge and LISA WHITE HARDWICK, Judge.

PER CURIAM.

Tammy Lepley[1] (Mother) appeals from a judgment entered in the Circuit Court of Bates County modifying the decree dissolving her marriage to Mark Durbin (Father). Specifically, Mother challenges the trial court's modification of the child custody, visitation, and child support provisions of that judgment.

Mother and Father were married on June 16, 1990, and subsequently resided in Adrian, Missouri. Three children were born of the marriage: Cassandra, born January 16, 1991; Michael, born February 27, 1995; and Alexander, born March 20, 1997.

On May 7, 1998, Mother filed a petition for dissolution of marriage in the Circuit Court of Bates County. On July 10, 1998,

---

1. At the time of the original decree, Mother's name was Tammy Durbin.

the circuit court entered its judgment dissolving the couple's marriage. The court awarded the couple joint legal custody over the children, granted Mother "primary physical custody" of all three children, and established a visitation schedule for Father. The court ordered Father to pay $800 per month in child support to Mother. Shortly after the decree was entered, Mother moved to the Kansas City area.

On July 30, 1999, Father filed a motion to modify the dissolution decree with regard to custody, visitation, and child support. Following a hearing, on August 24, 1999, the circuit court entered its "Judgment and Order of Temporary Child Custody, Visitation and Support." In that judgment, the court awarded "temporary primary physical custody" of the three children to Father and set forth a visitation schedule for Mother. The court terminated Father's child support obligation to Mother, but did not enter an award of support to Father.

On January 3, 2003, after Father, who is a member of the Missouri National Guard, was notified that he was going to be called up for active military duty, Mother filed a motion to modify child custody and support. Father was subsequently placed on active military duty and deployed to Iraq. Mother assumed custody of the children after Father was deployed. Father returned from Iraq in June 2004, but remained on active duty at Fort Leonard Wood until March 12, 2005. The couple agreed that the children should remain with Mother through the end of the 2005 school year.

On June 28, 2005, Mother filed an amended motion to modify child custody. Mother's motion was heard by the circuit court on December 15 and 16, 2005.

On August 1, 2006, the circuit court entered its "Order of Modification and Judgment Entry." In that judgment, the circuit court found that it was in the best interests of the children that Father and Mother share joint physical and legal custody of the children. The judgment provided: (1) that Mother's address should be Cassandra's address for purposes of mail and education and set forth a visitation schedule for Father, (2) that Respondent's address should be the boys' address for purposes of mail and education and set forth a visitation schedule for Mother, and (3) that Mother was to pay $340 per month in child support to Father. Mother brings three points on appeal from that judgment.[2]

In her first point, Mother contends that the circuit court erred in placing the boys primarily with Father because the weight of the evidence established that it was in their best interests to be placed with her instead. Mother then points to several pieces of evidence that she believes supports awarding custody of the boys to her.

"As in other judge-tried cases, our standard of review in a modification of custody proceeding is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Manula v. Terrill*, 136 S.W.3d 528, 530 (Mo.App. E.D.2004). The trial court's ruling will be affirmed "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it declares or applies the law incorrectly." *Johnston v. Dunham*, 172 S.W.3d 442, 445 (Mo.App. W.D.2005). In reviewing the trial court's judgment, we must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment and disregard all evidence and inferences to the contrary. *St. Lawrence v. St. Lawrence,*

2. Father did not file a responsive brief on    appeal.

109 S.W.3d 225, 226–27 (Mo.App. E.D. 2003).

■■■ " 'We give greater deference to the trial court in child custody cases than in other types of cases because the trial court is in the best position to judge the credibility of the parties, their sincerity, character, and other intangibles which may not be revealed by the record.' " *Hamer v. Nicholas,* 186 S.W.3d 884, 886 (Mo.App. W.D.2006) (quoting *In re Marriage of Parmenter,* 81 S.W.3d 234, 242 (Mo.App. S.D. 2002)). "We defer to the trial court's superior ability to assess the credibility of witnesses and view all facts and reasonable inferences in a light most favorable to its decision." *Dunkle v. Dunkle,* 158 S.W.3d 823, 832–33 (Mo.App. E.D.2005). "We do not reweigh the evidence, even if the evidence could have supported another conclusion." *Id.* at 833. "We presume that the court awarded custody in accordance with the children's best interests after reviewing all of the evidence and we will reverse its decision only if we are firmly convinced that the welfare and best interests of the children require otherwise." *Id.*

In making her argument, Mother wholly disregards our standard of review. She views the evidence in the light most favorable to herself and disregards substantial amounts of evidence favorable to Father or unfavorable to herself.

■■■ We have thoroughly reviewed the record and found that, while the evidence may also have supported a contrary decision, the evidence was more than sufficient to support the trial court's award of custody and that decision was not against the weight of the evidence.[3] The record reflects that both Father and Mother are capable, loving parents, who occasionally squabbled with each other but were ordinarily able to communicate with each other. Both could provide a suitable home for the children.[4]

Mother ignores substantial evidence favorable to the trial court's judgment. The record contains evidence of instances in which Mother took the children without notifying Father of their location, one time for almost a month, and that Mother had placed the children in therapy without consulting with Father. Father testified that the boys' behavior had deteriorated while he was in Iraq, and he presented evidence that Michael's performance at school had likewise declined. Mother admitted that "Adrian is a wonderful school." Furthermore, Michael testified that he and his brother enjoyed living in the country and

---

3. We gratuitously note that the trial court failed to make the findings required by § 452.375.6. Such findings are mandated in child custody modification cases where the parties do not agree on the custodial arrangements for the minor children. *In re Holland,* 203 S.W.3d 295, 302 (Mo.App. S.D.2006). "The trial court is not required to make findings on every best interest factor [listed in § 452.375.6], but must make written findings on relevant factors as well as on the public policy in Section 452.375.4." *Schlotman v. Costa,* 193 S.W.3d 430, 433 (Mo.App. W.D. 2006). In the case at bar, the trial court did not make findings on any of the best interest factors or a public policy finding in its judgment. The trial court simply found that it was in the best interest of the boys to stay

primarily with Father and in the best interests of Cassandra to stay primarily with Mother. The failure of the trial court to make any of the mandated best interest findings was error; however, that issue was not preserved below in a motion to alter or amend the judgment as required by Rule 78.07(c), and Mother has not raised the issue on appeal.

4. "A split custody award assumes both parents are 'fit parents.' " *In re Marriage of Barton,* 158 S.W.3d 879, 884 (Mo.App. S.D. 2005). "If either parent was unfit, the trial court would not have awarded primary physical custody of any of the children to that parent." *Id.*

taking part in all of the outdoor activities available to them in Adrian. In addition, both the paternal and maternal grandparents live within fifteen minutes of Father and would frequently see the boys when they are in Adrian.[5]

After assessing the credibility of the witnesses and weighing the evidence, the trial court concluded that it was in the boys' best interests to reside more with Father. This court must defer to that assessment. *Id.* at 832–33.

■ In her second point, Mother contends that the record did not contain any extraordinary circumstances that would allow for splitting the custody of the children between Father and Mother. She contends that the boys should not have been separated from their sister and should, therefore, have been placed primarily with her.

■ Mother is correct that "absent exceptional or unusual circumstances, Missouri courts do not support the separation of siblings or split custody." *In re Marriage of Barton*, 158 S.W.3d 879, 884 (Mo. App. S.D.2005). "However, it is also well established that the trial court has the authority to order such a custody arrangement if it is in the best interests of the children." *Id.* "There is no absolute set of rules to follow when awarding child custody; each case must be examined in light of its own set of unique facts." *Id.*

In this instance, the evidence reflects that Cassandra, who is now sixteen years old, did not want to live with her brothers and supports a finding that it was in her best interest not to do so. Over the summer before the final hearing, Cassandra told a DFS worker that she wanted to stay in Adrian with Father. Her mind changed, however, after her brothers moved to Adrian later that summer. At trial, Cassandra testified that she wanted to live with Mother and stay at school in Lee's Summit. Cassandra testified that Father gave her less attention and that she felt ignored with her brothers living in the same house.

Cassandra testified that she similarly felt Mother gave her brothers more attention when they were all together. Indeed, she told the DFS worker that her mother treated her like she did not exist when her brothers were around. Cassandra testified that Mother gave her more attention once her brothers were living with Father.

Cassandra was fifteen at the time of trial; her brothers were nine and eleven. Given the difference in age, sex, and stated interests of Cassandra and her brothers, the trial court could reasonably have determined that her interaction with her brothers, even if living in the same house, would be minimal. Cassandra indicated that she had sufficient contact with her brothers seeing them on alternating weekends. Furthermore, Cassandra clearly preferred to live separate from her brothers so she could receive more parental attention, and the trial court could reasonably have found it was in her best interest, and the interests of her brothers, for her to reside separately from her brothers.

In light of the facts and circumstances reflected in the record, the trial court did not abuse its discretion in determining that

---

**5.** While Mother asserts that Father is a bad moral role model for the children because he failed to pay child support to her before the temporary order was entered, a fact which he disputed, she ignores evidence that she too did not pay child support, that she had smoked cigarettes in the presence of the children, and that she had lived for an extended period with a man to whom she was not married. Furthermore, with respect to the child support payments, Mother wholly disregards the fact that she stipulated at the final hearing that Father had satisfied his child support obligation.

a split custody arrangement was in the best interests of the children. *See Id.* at 884–85. Point denied.

■ In her final point, Mother claims that the trial court erred in calculating the presumed child support amount under Form 14 because it gave Father a $871.00 reduction in monthly income based on a child born after the entry of the original dissolution decree. Mother argues that, because Father was the moving party, he was not entitled to such a reduction.

■ "This court reviews a trial court's Form 14 calculation 'to ensure the calculation was done accurately from a mathematical standpoint and that the various items and their amounts were included in the calculation and supported by substantial evidence.'" *Cohen v. Cohen,* 178 S.W.3d 656, 676 (Mo.App. W.D.2005) (quoting *Lagermann v. Lagermann,* 109 S.W.3d 239, 245 (Mo.App. E.D.2003)).

In the case at bar, the trial court, having rejected the Form 14s provided by Mother and Father, filled-out its own Form 14s. Two forms were required because of the split custody order. After filling out those forms and subtracting the one presumed child support amount from the other, as provided in the instructions, the trial court ordered Mother to pay the resulting presumed amount of child support to Father. In filling out those forms, the court credited Father with an $871.00 reduction in monthly income on Line 2(c), which "provides for an adjustment to the gross income for other children who are not part of the current proceeding for which a party has primary physical custody." *Monnig v. Monnig,* 53 S.W.3d 241, 249 (Mo. App. W.D.2001). The instructions for Line 2(c) state:

[T]he adjustment available to the moving parent in an action to increase or decrease the support payable under the existing order shall be the lesser of:

(1) The adjustment to which that parent was entitled for the particular child on line 2a or 2c when the existing order was entered, or

(2) The adjustment to which that parent is entitled for the particular child on line 2c as a result of an order in another action entered after the existing order.

The only child shown by the record to be in Father's primary physical custody aside from those involved in this proceeding was the child he had with his second wife subsequent to the dissolution of his marriage to Mother. "Since Husband was the moving party, he was not entitled to any adjustment for the child of his second marriage at the time the original support order was entered, as that child was not born at that time. Accordingly, the option (1) adjustment under the instructions is zero." *Monnig,* 53 S.W.3d at 249. Because the Line 2(c) adjustment is limited to the lesser of the two options, Father was not entitled to an adjustment to his gross income. *Id.*

Because the trial court incorrectly credited Father with an $871 per month reduction in his gross income in performing its Form 14 calculations, the case must be reversed and remanded for the trial court to recalculate the presumed amount under Form 14, to determine if the presumed amount is just, and to enter a new child support award. In all other respects, the judgment is affirmed.