

In the

Missouri Court of Appeals

Western District

| | | |
|---|---|---|
| **GREG WHITE,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD76321** |
| | ) | |
| **v.** | ) | **OPINION FILED: April 1, 2014** |
| | ) | |
| **COLE COUNTY, MISSOURI, ET AL.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable John B. Berkemeyer, Judge

Before Division Two: Gary D. Witt, Presiding Judge, Lisa White Hardwick, Judge and
Alok Ahuja, Judge

Greg White ("White"), the Sheriff of Cole County, Missouri,[1] appeals the circuit

court's grant of summary judgment in favor of the political subdivision of Cole County,

Missouri, and its three individual County Commissioners (collectively, the "County").

White filed suit against the County alleging that it was misappropriating law enforcement

sales tax funds that were specifically designated for law enforcement in Cole County.

---

[1] White alleges standing both as the elected Sheriff of Cole County and as an individual taxpayer of Cole County. Because there is no challenge as to his standing to bring this action in either capacity, we do not address this issue.

The trial court granted the County's motion for summary judgment. We agree with the trial court and affirm.

## FACTS AND PROCEDURAL HISTORY[2]

Cole County, Missouri, is a political subdivision of the State of Missouri and exists pursuant to section 46.075.[3] Marc Ellinger, Chris Wrigley, and Jeff Hoelscher were the elected County Commissioners of Cole County at the time this action was filed. The individual commissioners were sued in their official capacity.

The County submitted a Law Enforcement Sales Tax ("Tax") to Cole County voters, pursuant to section 67.582, on August 7, 2007, which was approved. The County issued an order enacting the Tax, which was collected beginning January 1, 2008.

All the revenue from the Tax is deposited into the Law Enforcement Fund ("Fund").[4] This Fund also includes general revenue appropriated from the County, proceeds from fees produced by the Sheriff's civil process division and other miscellaneous fees generated by the Sheriff's office. The Sheriff's department operations are paid for from the Fund.

This action concerns the expenditures of money from the Fund for the fiscal years of 2008 through 2010. The proceeds from the Tax, which were paid into the Fund each year, consisted of $4,935,027 in 2008, $5,048,783 in 2009 and $5,176,264 in 2010. The

---

[2] "When reviewing a trial court's grant of summary judgment, this court views the record in the light most favorable to the party against whom judgment was entered." *O'Rourke v. Esurance Ins. Co.*, 325 S.W.3d 395, 397 (Mo. App. E.D. 2010).
[3] All statutory citations are to RSMo 2000 as updated through the most recent cumulative supplement, unless otherwise indicated.
[4] This is defined as a separate fund for accounting purposes only. This money remains in the County's general account, but is segregated on the books to allow proper tracking of the deposits into and expenditures from the Fund.

general revenue funding that was appropriated by the County and paid into the Fund amounted to $1,882,296 in 2008, $2,040,000 in 2009, and $2,040,000 in 2010. The remainder of over $1 million that was annually deposited into the Fund came from the Sheriff's civil process division and other fees produced by the Sheriff's department.[5]

For each fiscal year since 1988, the County has hired Maximus, Inc. ("Maximus") as a consulting firm to perform a cost allocation study for the County to determine the proportionate amount of certain "shared expenses" that should be borne by the various county departments and elected officials' offices based on resource usage and proportional costs. These "shared expenses" included items such as information technology, workers' compensation, health insurance, liability insurance, auditing, postage, payroll, accounts payable, employment security payments, budgeting, supply administration and services provided to other departments and offices by the auditor, county clerk, treasurer and commission. These "shared expenses" are divided into "administrative" and "professional services." Based on the usage calculations made by Maximus for each department or elected official's office, the County Commission submits an invoice to that department or office, which then reimburses the County for its respective share of the "shared expenses."

The Maximus analysis determined that the Sheriff's department's combined actual share of the administrative and professional services costs amounted to $404,525 in 2008, $454,580 in 2009 and $525,901 in 2010. However, the amounts invoiced to the Sheriff's

---

[5] The Cole County Sheriff's Department civil process division produces an inordinate amount of fees compared to other sheriff's departments throughout the state due to the number of items of civil process they serve on the various state agencies and officials located in Jefferson City.

department by the County Commission were reduced to $269,463 for 2008, $298,771 for 2009 and $295,580 for 2010. The amounts invoiced were based on approximately three percent of the total amount deposited into the fund for each year. The Sheriff paid the 2008 and 2009 invoices from the Fund but refused to pay the 2010 invoice from the Fund. The Sheriff then brought this action challenging the County's authority to seek reimbursement for these amounts from the Fund.

Section 67.582.3 provides that the Tax revenue "shall be deposited in a special trust fund and shall be used solely for providing law enforcement services for such county" and further that it "may also be utilized for capital improvement projects for law enforcement facilities and for the payment of any interest and principal on bonds issued for said capital improvement projects." The County enacted an ordinance, consistent with the ballot language, providing that the funds generated from the Tax would be used for "facilities and law enforcement operating expenses."

White filed a Petition for Declaratory Judgment and Motion for Temporary Restraining Order and Preliminary and Permanent Injunctive Relief in Cole County Circuit Court on August 4, 2010, challenging the County's collection of administrative and professional service costs from the Tax for the years 2008 and 2009. The County filed a Counterclaim requesting a Declaratory Judgment finding that administrative and professional services costs are assessable pursuant to section 67.582 and requested an order requiring White to pay the 2010 costs.

The County filed its Motion for Summary Judgment, which was granted by the trial court. White timely appealed.

4

## ANALYSIS

In his five points on appeal, White argues that the court erred in granting summary judgment in favor of the County because (1) section 50.515 does not allow for the imposition of an administrative service fee on the Tax that is generated pursuant to section 67.582; (2) there is a genuine issue of material fact as to whether the Tax funds or general revenue funds were used to pay previous administrative service fees; (3) the administrative services and expenses were not "referenced in the ballot language through which the law enforcement tax was enacted;" (4) the administrative services and expenses "are not logically and definitely ones that would be included in 'facility and law enforcement operating expenses;'" and (5) the County did not establish its right to judgment as a matter of law.

## POINT I

In his first point, White alleges that the court erred in granting summary judgment to the County because section 50.515 does not allow for the imposition of an administrative service fee on the Tax funds that are generated pursuant to section 67.582. The County responds that section 50.515 is irrelevant to section 67.582 and further argues that approval for funds being used to pay for shared services is found in both the Commission's resolution to impose a county-wide sales tax and in the ballot language itself.

### Standard of Review

White seeks a reversal of the trial court's order granting summary judgment in favor of the County. Appellate review of the grant of summary judgment is *de novo*. *ITT*

5

*Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The Court will review the record in the light most favorable to the party against whom judgment was entered." *Id.* "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* Summary judgment will be upheld on appeal if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.*; Rule 74.04. Because we review all of White's points under this same standard, we do not repeat the standard below.

### Discussion

White argues that the approval of a fee imposition contained in one statute (section 50.515) cannot be used to impose a fee related to a different statute (section 67.582). White cites no legal authority for his argument, nor does he engage in a statutory construction analysis. In sole support of his argument, White contends that since the administrative fees being charged to law enforcement hover around three percent of the Tax funds generated, and because three percent happens to be the same percentage of fees allowed in section 50.515 for capital improvements, the County must be imposing the three percent fee from section 50.515 onto the Tax funds generated under section 67.582. White further argues that section 50.515 has nothing to do with section 67.582 and thus any extrapolation would amount to a misappropriation of funds.

We agree with White that the two statutes are completely unrelated. Section 50.515 allows for the imposition of a three percent "administrative fee" to be paid to the county in conjunction with certain county capital improvement funds (specifically the

6

county park fund, the county road and bridge fund, and any other specific purposes capital improvements fund), while section 67.582 allows for a specific county-wide sales tax to generate funds to support the county's law enforcement, which may include the construction of law enforcement facilities. The two statutes are in different chapters, do not reference each other and are in no way related.

We are, however, hard-pressed to follow White in concluding that the County improperly relied on section 50.515 to justify its imposition of administrative service fees on the Tax funds. We refuse to do so primarily because the County does not need to borrow approval from some other statute; approval for the use of the Tax funds at issue for "law enforcement services" is found within the statute authorizing the Tax, within the County's resolution implementing the Tax and within the ballot language approved by the voters. Section 67.582.5 contains the following language:

> All sales taxes collected by the director of revenue under this section on behalf of any county . . . shall be deposited in a special trust fund, which is hereby created, to be known as the "County Law Enforcement Sales Tax Trust Fund." . . . Expenditures may be made from the fund for any law enforcement functions authorized in the ordinance or order adopted by the governing body submitting the law enforcement tax to the voters.

Of import is the legislature's directive that the funds can be used for *any law enforcement function that is authorized in the order adopted by the governing body submitting the tax to the voters*. This language allows local governing bodies to decide how the Tax money would best be spent in their respective counties, so long as it is spent on a law enforcement function. The "order adopted by the governing body" of Cole County contains the following language:

7

> [T]he County Commission has determined that it is in the best interests of the County to impose a countywide sales tax for the purpose of providing law enforcement services in the County, including without limitation the acquisition, construction, furnishing, operation, and maintenance of law enforcement facilities and providing funds for facility and law enforcement operating expenses . . .

The language within the resolution clearly allows for the use of the Tax to pay for "law enforcement operating expenses." This identical language is also found on the actual ballot submitted to the Cole County voters.

White makes no argument that the amounts established by Maximus or even the lesser amounts assessed by the County against the Fund were not legitimate "law enforcement operating expenses" or that the amounts assessed by the County against the Sheriff for its portion of the "shared expenses" exceeded the actual amount of those "shared expenses" attributable to the Sheriff's department.[6] Further, because the amount of general revenue funds appropriated by the County were commingled with the Fund and far exceeded the amount invoiced to the Sheriff for "shared expenses," it is impossible for White to establish that the "shared expenses" were paid with Tax funds. Regardless, even if White could somehow prove it, the payment of "shared expenses" from Tax funds is not prohibited.[7]

---

[6] This is likely because White knows the actual amount of the "shared expenses" attributable to the operation of the Sheriff's department is closer to the significantly higher sum determined by Maximus as opposed to the substantially lower sum invoiced to the Sheriff by the County.

[7] The fallacy of White's argument is shown by the fact that all the County had to do was withhold the amount of the Sheriff's "shared expenses" from the annual general revenue appropriation provided to the Sheriff's department each year and White's complaint would be entirely eliminated -- a fact he conceded at oral argument.

8

Thus, it should be clear that the imposition of a fee to cover the costs of "operating expenses" associated with law enforcement operations does not erroneously stem from section 50.515 but properly stems from the law enforcement sales tax statute itself.

We see no error in the court granting judgment to the County because not only does White offer absolutely no legal support for his argument, he legally cannot prevail on this point. Point One is denied.

## POINT II

In Point Two, White contends that there is a genuine issue of material fact as to whether Tax funds or general revenue funds were used to pay previous shared expenses in fiscal years 2008 and 2009.

### Discussion

White argues that there is a disputed material fact at issue that precludes the grant of summary judgment to the County. He bases his argument on a single comment made at a commission meeting wherein an individual commissioner allegedly stated, with regard to professional services and computer support, "This year we are putting this money in from general revenue and not from sales tax." White argues that this statement creates a genuine issue of material fact concerning which funds were used to pay for the "shared services."

Based on the record before us, we agree that it is unknown whether Tax funds or general revenue funds were allocated for the cost of the "shared services." However, as discussed in Point One, there is no prohibition regarding the use of the Tax funds to pay for a "law enforcement operating expense." Further, as previously addressed, the general

9

revenue funds appropriated to the Sheriff's department by the County (to supplement the Tax funds the Sheriff's department receives) were far in excess of the amount of "shared services" for which law enforcement was invoiced.

White cites no legal authority that would indicate that such shared services *cannot or should not* be paid from the Tax funds. To the contrary, as explained in Point One, the County has a legal right to use the Tax funds for "law enforcement operating expenses" because the statute gave that authority to the County. That authority was specifically authorized in the resolution implementing the Tax and ballot language approved by the voters.[8]

Thus, it is irrelevant whether the operating expenses were paid out of the Tax funds or out of general revenue funds. Point Two is denied.

### POINTS III and IV

Because White's arguments in Points Three and Four are similar in nature and because both rely on the same single opinion issued from this court, we address them together. In Points Three and Four, White argues that the trial court erred in granting summary judgment because the County "failed to show that they were entitled to judgment as a matter of law in that the services and expenses . . . were not referenced in the ballot language through which the law enforcement tax was enacted" and "are not logically and definitively ones that would be included in 'facility and law enforcement operating expenses.'"

---

[8] White's argument that computer technology services are not "law enforcement operating expenses" is addressed *infra* in our discussion of Points Three and Four.

10

**Discussion**

White argues that the services for which law enforcement was billed were not referenced in the ballot language that was submitted to the voters of Cole County. These services include: information technology services and equipment; building depreciation; other equipment usages; worker compensation, health insurance and auditing; postage; financial services such as payroll, accounts payable, worker compensation administration, budgeting, and supply administration; and services provided by other departments to the Sheriff's office including auditor, treasurer and commission. Although he acknowledges that the payment of these services may have been contemplated by the County, White maintains that none of these are "operating expenses" which was the phrase used by the Commission in both its resolution and on the ballot.

In support of his contention, White relies on *Armstrong v. Adair County*, 990 S.W.2d 64 (Mo. App. W.D. 1999). In *Armstrong*, the issue was whether language used in the ballot stating that the sales tax would be used to pay for an "expansion" of the jail could justify the use of the funds to build an entirely new jail. *Id.* at 66. We noted that a "general principle of statutory construction provides that 'the express mention of one thing implies the exclusion of another.'" *Id.* (citation omitted). We held that by describing the project as an expansion, the language precluded any other meaning where the logical choice was to either expand an existing facility or build a new facility. *Id.* White argues that the case at hand presents the same issue and, as such, our holding in *Armstrong* should guide our decision in the case at bar. We disagree.

11

While the issue White raises is what "law enforcement operating expenses" means as used on the ballot and by the County Commission in its resolution, the situation here is not the same as in *Armstrong*. In *Armstrong*, we held that the "plain and ordinary meaning of 'expansion' does not connote enlarging a jail by building a new one on a different site which is bigger." *Id.* at 66. Moreover, the phrase "expand the detention center" excluded the "erection of a new jail." *Id.* at 67. Because the Commission used language that explicitly excluded that for which it later sought to use funds, it was improper. *Id.* Here the phrase "law enforcement operating expenses" is inclusive of many things. Thus, we do not find the facts and issue in *Armstrong* to be on point in the instant case.

"Law enforcement operating expenses" does not exclude anything that is related to the Sheriff's department; rather, it is broad by design. Further, language used in the County's resolution and in the ballot language was identical such that the voters were asked to specifically approve the Tax for "law enforcement operating expenses." "[W]e are cognizant of the fact that the voters must be informed of the purpose of the creation of a proposed [tax]." *Little Portion Franciscan Sisters, Inc. v. Boatright*, 26 S.W.3d 443, 445 (Mo. App. S.D. 2000) (citation omitted). Thus, exactly what was described by the Commission was passed by the voters. White does not argue that the shared services charges assessed were not properly attributable to the operation of the Sheriff's office. Instead, White's argument in Point Three is that the "services and expenses" were not "referenced in the ballot language." This argument is without merit and is denied.

12

Similar to his argument in Point Three, White asserts in Point Four that even if the voters approved "law enforcement operating expenses," they did so without understanding that certain costs were going to be included in this category. White refers to the Maximus report, which forecasts departmental budgeting for the County, in this argument. White maintains that "it is unreasonable if not absurd to conclude that the voters of Cole County perceived, anticipated or believed that the [Maximus report] expenditures were included within the term 'facility and operating costs.'" The expenditures to which White specifically refers are (1) information technology equipment and personnel to service it, (2) processing of payroll and payment of law enforcement agency bills, (3) coverage for worker compensation/auto/property/liability insurance, (4) an auditor to audit grant programs, and (5) building maintenance and depreciation as a cost of operation.

Contrary to White's perception of Cole County voters, we think that a voter would not be shocked to learn that the computers in squad cars or those that are used to create police reports are paid for and maintained by the Tax, or that "operating costs" would include paying bills incurred by law enforcement, including the required workers' compensation and employment security payments required to hire a deputy. Thus, we do not find White's argument, based on his lack of respect for the intelligence of local voters, to be persuasive.

White again relies on *Armstrong* to argue that the County did not get approval from the voters to use Tax funds to pay these shared expenses. He argues that the expenses and services listed above are "not logically and definitively ones that would be

included." However, he cites to no case other than *Armstrong* that would give guidance as to what *should* be included or excluded from "operating expenses." This is likely because section 67.582.5 delegates to the governing body in each county the authority to spend the Tax funds on "any law enforcement functions authorized in the ordinance or order adopted by the [Commission] submitting the law enforcement tax to the voters." Thus, if it can be logically and reasonably included in "law enforcement operating expenses," it can be assessed against the Tax proceeds based on the authority of the statute, the authority in the County's resolution and the authority of the ballot language.

As a final note, a further reading of section 67.582 indicates to us that the legislature did not intend to require that which White argues is necessary: that is, a specific list of each type of expense to be approved by voters in order for those to be paid with Tax funds. Section 67.582.2(1) describes what the ballot language must contain, stating if the "proposal submitted involves only authorization to impose the tax authorized by this section, the ballot shall contain substantially the following:

> Shall the county of _____ impose a countywide sales tax of _____ for the purpose of providing law enforcement services for the county?

The only other ballot language listed is for use when a county wants to enter into agreements with other counties to form a regional jail. § 67.582.2(2). It becomes apparent that if "law enforcement services" is sufficient for the legislature, that "law enforcement operating costs" would also suffice. For all of the foregoing reasons, Points Three and Four are denied.

14

## POINT V

In point five, White argues that the court erred in granting summary judgment because the County failed "to establish its right to judgment as a matter of law" and "did not identify any such material facts or cite to any case law supporting the position that they were entitled to" it.

### Discussion

White contends that because the County did not cite "to any statute or case law, or to any supported legal theory" in support of its position, its motion for summary judgment fails on its face and should not have been granted. In support of his argument that the County's motion failed because it did not cite to any statute or case law, White ironically cites to no statute or case law in support of his point. "This point impedes review because it offers no legal support for its claim." *Shelter Mut. Ins. Co. v. Mitchell*, 413 S.W.3d 348, 353 (Mo. App. S.D. 2013). "An appellant must develop the contention raised in the point relied on in the argument section of the brief." *Hermann v. Heskett,* 403 S.W.3d 136, 142 (Mo. App. E.D. 2013) (citation omitted). "If a party does not support such contentions with relevant authority or argument beyond conclusory statements, the point is considered abandoned." *Id.*; Rule 84.04(d)(1)(c).

Point Five is therefore denied.

### CONCLUSION

As we noted in our discussion of Point One, a reading of the statute, resolution and ballot language all confirm that the County has the authority to use a portion of Tax funds to pay the "operating costs" of the Sheriff's department. It is just that simple. Moreover,

basic mathematics confirm that the general revenue funds allotted to the Sheriff's department by the County far exceed that for which the department is invoiced for the shared services.

Had White sufficiently alleged that the County was including non-law enforcement amounts in the Sheriff's portion of the shared expenses or was charging in excess of the amount actually used by the Sheriff's department within the shared expenses, he may have been able to survive summary judgment. However, he alleged neither.

For all of the foregoing reasons, we affirm the judgment of the trial court granting summary judgment to the County. While costs cannot be assessed against the state or a political subdivision of the state,[9] White brought this action partially on behalf of himself as a taxpayer of Cole County. The costs of this appeal are therefore assessed against White in his individual capacity.

_____
Gary D. Witt, Judge

All concur

---

[9] "Absent statutory authority, costs cannot be recovered in state courts from the state of Missouri or its agencies or officials." *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 882 (Mo. banc 1993) (citations omitted).