

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| GREGORY J. HALL, INDIVIDUALLY AND AS NEXT FRIEND FOR STACIA UTLEY, | ) ) ) | WD76417 |
| | ) | |
| Appellant, | ) | OPINION FILED: August 26, 2014 |
| | ) | |
| v. | ) | |
| | ) | |
| AMBER FRALA UTLEY, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Christine T. Sill-Rogers, Judge

Before Division Four: Alok Ahuja, Chief Judge, Presiding, Cynthia L. Martin, Judge and
Randall R. Jackson, Special Judge

Gregory Hall ("Father") appeals from the trial court's judgment of paternity that

ordered the minor child to be placed in the sole legal custody of Amber Frala Utley

("Mother"), ordered the minor child to be placed in the joint physical custody of Father

and Mother, and ordered Father to pay child support. Father asserts that the trial court

erred: (1) in failing to grant a new trial or amend the judgment regarding the calculation

of child support based on newly discovered evidence; (2) in granting Mother sole legal

custody; (3) in failing to make specific findings in its judgment requested by Father; (4)

in designating Mother's address as child's principal address; (5) in issuing a protective order regarding Mother's medical condition; and (6) in admitting hearsay evidence. Finding no error, we affirm and remand to the trial court for consideration of Mother's request for attorney's fees.

## Factual and Procedural Background[1]

Mother gave birth to Stacia Utley ("the child") in February 2000. During the first year of the child's life, an administrative action determined Father to be the child's biological father and ordered Father to pay child support of $319 per month and to provide health insurance for the child.

The child has resided with Mother throughout the child's entire life. Although invited to the hospital for the child's birth, Father did not attend or visit the child in the hospital. Father's first contact with the child was when she was five weeks old. When the child was four months old, Father began visiting the child at Mother's home every Sunday for approximately an hour. When the child was one year old, Mother and Father informally agreed that Father would have visitation every other weekend, and that the child could accompany him on family vacations.

This informal visitation agreement continued until March 2006 when, according to both Father and Mother, a dispute arose about the techniques Father's wife was using to discipline the child. From March 2006 to May 2007, Father did not visit the child, did not call Mother to ask how the child was, did not acknowledge the child's birthday or

---

[1]We view the facts in the light most favorable to the trial court's judgment. *Courtney v. Roggy*, 302 S.W.3d 141, 144 (Mo. App. W.D. 2009).

Christmas, and had no other contact with the child. In May 2007, Mother telephoned Father and told him that the child missed him. Father spent the following weekend with the child and thereafter resumed the informal every-other-weekend visitation arrangement.

On November 14, 2011, Father filed a petition to adjudicate paternity, custody, parenting terms, and support with respect to the child. In addition to requesting a judicial determination of paternity,[2] Father's petition asked the trial court to award Father sole legal and sole physical custody of the child and to grant Mother supervised visitation. Father's petition alleged that Mother "has a history of drug abuse and is likely to be currently actively using unlawful drugs" and that Mother "has medical issues and economic stability issues which make it difficult or impossible for her to provide a stable home" for the child. Father's petition also requested that the trial court order Mother to pay child support.

Mother filed an answer and counter-petition. Mother's answer denied Father's allegations of drug abuse, medical issues, and economic instability. Mother's counter-petition asked the trial court to award joint legal and joint physical custody over the child, with equal parenting time. Mother's counter-petition also requested that the trial court order Father to pay child support and to pay Mother's attorney's fees and costs.

A trial was held over two days in August 2012 and in November 2012. Father, Father's wife, Father's mother, a private investigator hired by Father, and Mother testified during the trial. Father also entered Mother's deposition testimony into evidence.

---

[2]Father did not contest paternity. His petition alleged that he was the father of the child.

3

Following its consideration of the evidence, the trial court entered a judgment of paternity ("Judgment").

The Judgment declared Father to be the biological father of the child. The Judgment awarded sole legal custody of the child to Mother and joint physical custody of the child to Mother and Father. The Judgment directed the child to reside with Mother except on alternating weekends when the child would reside with Father, subject to a holiday and vacation schedule. The Judgment provided that Father would forfeit parenting time if he was working out of town. Mother's home was designated as the child's address for mailing and educational purposes. Father was ordered to pay Mother $1,371 per month in child support and to provide health, dental, and vision insurance for the child.

Father filed a motion for new trial or, in the alternative, for relief from judgment and suggestions/affidavits/exhibits in support thereof ("Motion"). The Motion set forth several bases for relief, most of which are raised on appeal. The trial court overruled the Motion.

Father appeals, setting forth six points of error.

## Point One: Whether Newly Discovered Evidence Necessitated a New Trial for the Child Support Calculation

Father's first point on appeal asserts that the trial court erred in denying the Motion. Father asserts that he was entitled to either a new trial or an altered or amended judgment because newly discovered evidence required a decrease in the presumed amount of child support. Specifically, Father claims that after the case was tried, but

4

before the Judgment was entered, he learned he would not receive a substantial payment owed him on a subcontract, resulting in a substantial decline in his income. Father also claims that after the Judgment was entered, he determined that the cost of health insurance would be significantly higher than what the trial court and the parties had estimated.

We review the trial court's denial of a motion for new trial for abuse of discretion. *Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 325 (Mo. banc 2014). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration. *Id.* "Motions for new trial based on newly discovered evidence 'are looked upon with disfavor, and the party urging such an error on appeal must carry a heavy burden.'" *Id.* (quoting *Soehlke v. Soehlke*, 398 S.W.3d 10, 21 n.6 (Mo. banc 2013)).

Rule 78.01 provides:

> The court may grant a new trial of any issue upon good cause shown. A new trial may be granted to all or any of the parties and on all or part of the issues after trial by jury, court or master. On a motion for a new trial in an action tried without a jury, the court *may* open the judgment if one has been entered, take additional testimony, amend findings of fact or make new findings, and direct the entry of a new judgment.

(Emphasis added.) To prevail on a motion for new trial based on newly discovered evidence, the party must demonstrate:

> (1) that the evidence has come to [his] knowledge since the trial; (2) that the failure of the evidence to come to [his] knowledge sooner was not the result of a lack of due diligence; (3) that the evidence is so material that it would probably produce a different result if a new trial were granted; (4)

5

that the evidence is not cumulative only; (5) that the parties' affidavit should be produced, or its absence be accounted for; and (6) that the object of the evidence is not merely to impeach the character or credibility of a witness.

*Pijanowski v. Pijanowski*, 272 S.W.3d 321, 324 (Mo. App. W.D. 2008).  Father's "newly discovered evidence" fails to meet these requirements.

Father's Motion "request[ed] recalculation of child support to take into consideration newly discovered evidence that [Father's] 2012 income will be more than $32,000.00 less than his 2011 income which was used to calculate child support."  To support this contention, Father attached two documents to the Motion: (1) Father's affidavit in which he stated that he learned after trial that a $32,000 subcontract payment owed to him would not be paid in 2012; and (2) a letter dated nearly a month after the entry of Judgment from a contractor confirming that approximately $32,000 owed to Father, a subcontractor, was not paid in 2012 because the contractor had yet to be paid by the customer.  While these documents, if accepted as true, establish that Father was not paid $32,000 he was owed in 2012, they do not establish that Father was entitled to a new trial based on newly discovered evidence.

First, the "newly discovered evidence" is cumulative of Father's trial testimony. Father generally testified that his income fluctuated from year to year and that he anticipated lower income in 2012 than that earned in 2011.[3]  Father did not testify that he wouldn't receive the $32,000 payment at all, but only that it would not be paid as he had hoped in 2012.  Father's "new evidence" was merely cumulative of his trial testimony.

_____

[3]Father earned $232,000 in 2011.

6

Second, if the trial court calculated child support based on Father's 2011 income, as Father contends on appeal, then the trial court either disregarded Father's trial testimony about an anticipated reduction in income in 2012, or the trial court accepted Father's trial testimony that fluctuations in his income from year to year were not unexpected. Father has not established, therefore, that the "newly discovered evidence" of an unpaid subcontract payment was so material that its consideration would probably produce a different result.

The Motion also requested a new trial due to "the newly discovered evidence that the cost of health and dental insurance for the minor child will be more than three times the sum estimated at trial." Father attached copies of documents he received from his health insurance company following the entry of Judgment. Those documents indicate that because of the child's health history, the child could not be added to Father's health and dental insurance policy and would require a separate policy at a cost of $263.80 per month.

In calculating child support, the trial court had assumed the cost for health and dental insurance for the child would be $105 per month *based on input from Father*. Father's Brief explains that at trial, he divided his family's current insurance premium (which included insurance for other children Father had with his wife) to estimate the pro rata cost to add the child to his insurance.[4] After the entry of Judgment, Father called his insurer and learned that the child could not be added to his policy and would require a

---

[4]The administrative order entered within the first year of the child's life had directed Father to provide health insurance. Father never did so and claimed at trial that he was not aware of the obligation to do so.

7

separate policy. Father has not explained why this evidence could not have been discovered through due diligence prior to trial. "'Due diligence is defined as that degree of assiduity, industry or careful attention called for under the circumstances of the case . . . .'" *Pijanowski*, 272 S.W.3d at 325 (quoting *Higgins v. Star Elec., Inc.*, 908 S.W.2d 897, 903-04 (Mo. App. W.D. 1995)).

The trial court did not abuse its discretion in denying Father's Motion based on a claim of newly discovered evidence.

Father's first point on appeal is denied.

**Point Two: Whether Awarding Sole Legal Custody to Mother Was Proper**

In his second point on appeal, Father asserts that the trial court erred in awarding sole legal custody to Mother. Father claims that this award is against the weight of the evidence, fails to serve the public policy of the state, and does not serve the best interests of the child.

As with other court-tried cases, our review of the Judgment is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or it erroneously declares or applies the law. *Querry v. Querry*, 382 S.W.3d 922, 925-26 (Mo. App. W.D. 2012). In reviewing the trial court's judgment, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences. *Durbin v. Durbin*, 226 S.W.3d 876, 878 (Mo. App. W.D. 2007). In other words, we will not reweigh evidence even if it could have supported another conclusion. *Id.* at 879.

8

In child custody cases, "'[w]e presume that the court awarded custody in accordance with the children's best interests after reviewing all of the evidence and we will reverse its decision only if we are firmly convinced that the welfare and best interests of the children require otherwise.'" *Id.* (quoting *Dunkle v. Dunkle*, 158 S.W.3d 823, 833 (Mo. App. E.D. 2005)).

Legal custody concerns "the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child." Section 452.375.1. Legal custody may be awarded jointly to both parents or solely to one parent. *Id.* Joint legal custody is preferred on public policy grounds, but the preference is not absolute. *Meyer v. Block*, 123 S.W.3d 316, 324 (Mo. App. W.D. 2003) (citing section 452.375.4). Instead, when determining whether to award joint or sole legal custody, the trial court must consider the best interests of the child. Section 452.375.2. "'In determining whether joint legal custody is in the child's best interests, we consider the parties' commonality of beliefs concerning parental decisions, the parties' abilities to function as a parental unit in making those decisions, and the parties' demonstrated willingness and ability to share the rights and responsibilities of raising their [child].'" *In re Marriage of Brown*, 310 S.W.3d 754, 758 (Mo. App. E.D. 2010) (quoting *In re Marriage of Sutton*, 233 S.W.3d 786, 790 (Mo. App. E.D. 2007)).

Here, the trial court acknowledged but rejected both Mother and Father's proposed parenting plans recommending joint legal custody.[5] The trial court instead awarded sole legal custody to Mother. In explaining its decision, the trial court found that: (1)

---

[5]Father's petition had originally sought sole legal custody of the child.

9

throughout the child's life, Father had expressed no concern regarding the child's health and had not participated in medical visits for the child though invited to do so. Yet Father criticizes the child's allergy and asthma diagnoses; (2) Father never participated in the child's education or school activities and never visited the child's school or contacted her teachers until trial when he scheduled a conference with the school without notifying Mother; (3) Father has a past history of abandoning the child; (4) Father fails to adequately communicate with Mother. Father's job requires him to work out of town frequently, yet he never notifies Mother, and he fails to advise Mother of the child's whereabouts when he is out of town on business. Father has confiscated the child's cell phone, denying her access to Mother and to her online school assignments; (5) Mother credibly testified that her communication with Father had deteriorated since he filed the instant action. Despite Mother's "[expression of hope] that they could co-parent," the trial court concluded that would not be possible based on Father's "disdain for Mother;" (6) Father's and his wife's testimony was critical of Mother, and Father "could not make a positive statement about Mother;" and (7) Father has attempted to engage the child in discussions about the litigation and has warned her not to discuss what occurs at his house. Father has also told the child "it is her responsibility to keep the peace between the two households."

The trial court's factual findings relating to its legal custody determination were supported by the weight of the evidence at trial. Father admitted at trial that he did not know the names of the child's doctors and had never accompanied the child to appointments. Father also testified at trial that, prior to filing the instant action, he had

10

not visited the child's schools and had never met with any of the child's teachers. Father testified that his paintless dent repair business requires him to travel out of town, and Father admitted that he does not inform Mother when he is out of town on business. In addition to alleging in his petition that Mother was "unfit" and that Mother had a history of drug use, Father repeatedly expressed his disdain for Mother during his testimony. For example, Father testified at trial that Mother sets a poor example for the child in that "[s]he's showing [the child] that you can sleep all day and be up all night and live off, you know, Section 8, WIC." Further, when asked to describe Mother in three words, Father stated, "She's not -- not-- not attentive to our child." Then Father testified that he believed Mother was an "absent mother."

More to the point, Father does not contest that the findings made by the trial court in support of its decision to award sole legal custody to Mother are supported by evidence. Instead, Father generally complains that the trial court drew "negative inferences" from facts "through the clouded lens of [Mother's] testimony." [Appellant's Brief p. 23] Father engages in a lengthy discussion about why the trial court should have disregarded Mother's testimony as not credible, which would, according to Father, have required the trial court to view Father's conduct through a different and more favorable lens. Though Father couches his point on appeal in terms of the weight of the evidence, Father is actually asking us to reject all of Mother's testimony and evidence as not credible.

Father's argument fails to recognize that because the trial court, as the finder of fact, is in a superior position to assess the credibility of witnesses, we will not disturb the

11

trial court's credibility findings on appeal. *Durbin*, 226 S.W.3d at 879. Thus, Father's demand that we "should review all of [Mother's] testimony . . . [and] re-evaluat[e] [] the negative conclusions drawn by the trial court about [Father]" is an invitation we will not accept.

Father also argues that the Judgment's award of sole legal custody to Mother violates Missouri's public policy preference for joint legal custody. Though section 452.375.4 states that "the public policy of this state [is] to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution," that public policy preference is not an absolute. If parents are unable "to cooperate, communicate, and function as a unit in making decisions," then joint legal custody is inappropriate, regardless the state's public policy. *In re Marriage of Brown*, 310 S.W.3d at 758. Here, the trial court considered the evidence presented at trial, and concluded that Mother and Father were not able to cooperate, communicate, and function as a unit in making decisions regarding the child. Thus, the trial court ordered that Mother have sole legal custody of the child. This decision was supported by substantial evidence.

Father's second point on appeal is denied.

### Point Three: Whether the Judgment Made Specific Findings of Fact as Requested by Father Pursuant to Rule 73.01(c)

Father's third point on appeal asserts that the trial court erred in failing to make detailed findings of fact that he requested pursuant to section 73.01(c), requiring reversal.

Father claims on appeal that the trial court's Judgment fully addressed some of his requests, ignored other requests, and addressed some requests in only a brief, conclusory fashion.

> Rule 73.01(c) provides, in relevant part:
>
> If a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded.
>
> The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow.

Where a party properly requests findings of specific fact issues, the provisions of Rule 73.01(c) are mandatory. *Plager v. Plager*, 426 S.W.3d 689, 692 (Mo. App. E.D. 2014). "Failure of a court to prepare specified findings of fact as requested by counsel under Rule 73.01 is error and mandates reversal when such failure materially affects the merits of the action or interferes with appellate review." *Hilligardt-Bacich v. Bacich*, 174 S.W.3d 11, 14 (Mo. App. E.D. 2005). "[I]f the record supports the judgment or if the court makes findings that substantially comply with a party's requests," then we will affirm. *Plager*, 426 S.W.3d at 693.

Prior to trial, Father duly requested that the trial court make findings of fact on twenty-eight subjects. On appeal, Father contends that the trial court failed to make findings, or made inadequate findings, with respect to ten of those subjects as follows:

> 11) The role that each parent has played in the upbringing of the child, including how much time each parent has spent with the child, whether such time has been meaningful, and the impact of each parent's time with

13

the child on the child and the court's decision as to how the parents should divide regular parenting time with the child.

. . . .

15) How tax deductions relative to the minor child should be allocated.

16) Whether either party should be ordered to contribute to the attorneys' fees of the other party, and, if so, to what extent, and what facts were taken into consideration by the Court in making such order.

. . . .

18) The needs of the [Mother's] other daughter as they relate to the [Mother's] ability to work.

19) The needs of the [Mother's] other daughter as they relate to the suitability of the [Mother's] home for a principal residence for the child of these parties.

20) The needs of the [Mother's] other daughter and the degree to which [Mother] is able to meet those needs, as such issues relate to the [Mother's] ability to perform her essential function as the parent of the child of these parties.

21) Whether income should be imputed to [Mother], and if so, in what amount.

. . . .

23) Whether the child's time in the father's home may be spent in the company of the child's stepmother, half-sister and stepsister, even if [Father] is out-of-town [sic] at the time such time occurs.

. . . .

25) Whether the stepmother can provide transportation for the minor child to spend parenting time in [Father's] home.

26) How the parties should divide or share the transportation of the child between them.

The parenting plan provisions in the Judgment expressly noted that the child "shall not be required to reside at Father's home when he is out of town working. When he is

14

out of town working the visit is cancelled."  This finding substantially complies with the question posed by Item 23.  The parenting plan in the Judgment also expressly noted that "Father *or his designee*" would pick the child up at Mother's home for Father's parenting time, and that Mother would retrieve the child from Father's home at the end of Father's parenting time.  This finding substantially complies with the questions posed by Items 25 and 26.

The Judgment made numerous factual findings regarding the role of both Mother and Father in the child's life, and the manner in which parenting time should be divided, the subject of Item 11.  With respect to Mother's upbringing of the child, the Judgment found:

> The child has resided with Mother all her life and Mother had met all of the child's basic needs.  She housed, fed and clothed the child.  She has enrolled the child in excellent schools and the child has performed well in school earning honor roll recognition at times.  Mother has overseen and scheduled all of the child's health care from birth to the present.

With respect to the Father's role in the upbringing of the child, the Judgment found that Father: was invited but did not attend the child's birth; first saw the child when she was five weeks old after Mother initiated the contact; began dropping by on Sundays for an hour to see the child when she was four months old; offered no financial support for the child until the state brought an administrative child support action against him when the child was ten months old; began visiting the child on alternate weekends when she was in preschool; expressed no concern for the child's health or health care providers throughout her entire life; does not know the name of the child's pediatrician and has never attended an office visit with the child though invited to do so; never attended any of the child's

15

school activities or met with any of her teachers through the 6th grade; and has a history of abandoning the child, noting the fifteen-month period between March 2006 and May 2007 when Father completely withdrew from the child and made no contact with, or inquiries about, her. Finally, the Judgment plainly describes the manner in which parenting time will be divided. These collective findings substantially comply with the question raised by Item 11.

Item 21 asked the trial court to determine whether income should be imputed to Mother. At the time the request for the finding was made, Mother was unemployed. The Judgment noted that Mother had been unemployed "in 2011 and in 2012 until November 15, 2012," and noted that "[s]he is now employed and earns $1,560 per month." The trial court's Form 14 attributed this income amount to Mother, substantially complying with the question posed by Item 21.

Item 16 addressed attorney fees, and asked the trial court to find whether either party should be ordered to contribute to the attorney's' fees, and, if so, to what extent, and what facts were taken into consideration by the Court. The Judgment specifically concluded:

> [Mother's attorney] has provided reasonable and necessary legal representation for Mother. She shall have Judgment against [Father] for $7,000 to cover a portion of the costs of Mother's legal fees.

The Judgment thus found whether and in what amount fees should be ordered paid, and provided the factual basis for the amount awarded, noting it represented "reasonable and necessary" fees for a portion of Mother's legal representation. The Judgment did not,

16

however, explain the facts on which the trial court relied to decide to award Mother a portion of her attorney's fees, though Father requested this factual finding.

Moreover, the Judgment does not contain findings of fact for Item 15 (concerning the division of tax deductions), or Items 18, 19, or 20 (each concerning the needs of Mother's other daughter and the impact of those needs respectively on Mother's ability to work, the suitability of her home, and her ability to perform her essential functions as a parent).

"The failure of a trial court to issue appropriately requested findings does not always require reversal." *Legacy Homes P'ship v. Gen. Elec. Capital Corp*., 10 S.W.3d 161, 163 (Mo. App. E.D. 1999). Unless the absence of required findings makes meaningful appellate review impossible, the trial court's failure is harmless error. *Id.*; s*ee also Hilligardt-Bacich*, 174 S.W.3d at 14. The issues raised by Father on appeal do not implicate at all the subject matter of Items 15, 16, 18, 19, and 20 as to which no findings were made, or do so only tangentially. Thus, the absent findings do not interfere with our ability to conduct meaningful appellate review of father's claims of error.

Father's third point on appeal is denied.

**Point Four: Whether the Trial Court Erred in Designating Mother's Address as the Address for the Child**

Father fourth point relied on asserts that the trial court erred in designating Mother's residence as the principal address of the child for the purposes of mailing and education because the trial court failed to appropriately consider and weigh evidence

relating to the eight "best interests" factors identified in section 452.375.2 in making its determination.

Section 452.375.2 requires the trial court to consider eight factors when "determin[ing] *custody* in accordance with the best interests of the child." (Emphasis added.) "Custody" is statutorily defined as "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof." Section 452.375.1(1). Legal custody refers to the "decision-making rights, responsibilities, and authority regarding the health, education and welfare of the child," while physical custody concerns the "time during which a child resides with or is under the care and supervision" of each parent. Section 452.375.1(2)-(3). While the statutory definition of physical custody includes the word "reside," it does so only in reference to the time to be spent with each parent.

The Legislature recognized that an award of joint physical custody leaves unresolved the child's "address" for purposes of education and mailing. Section 452.375.5(1)-(2) provides that, if a trial court awards joint physical custody, "[t]he residence of one of the parents shall be designated as the *address* of the child for mailing and educational purposes." (Emphasis added.) Plainly, the designation of an address for the child for mailing and educational purposes is not a custody determination, rendering the eight factors found in section 452.375.2 inapplicable to the designation. *See Loumiet v. Loumiet*, 103 S.W.3d 332, 339 (Mo. App. W.D. 2003) (noting that the designation of an address for educational and mailing purposes is separate from the award of physical custody because section 452.375.5 does not require the designation of the address to

18

coordinate with the parent with whom the child is to reside for a greater period of time). Father's fourth point on appeal is thus based on a faulty premise.

Moreover, Father's argument following his point relied on never addresses how or in what manner the trial court erred in designating Mother's residence as the child's address for education and mailing purposes. Instead, Father complains about the parenting time awarded each parent. "'An appellant must develop the contention raised in the point relied on in the argument section of the brief.'" *White v. Cole County*, 426 S.W.3d 27, 35 (Mo. App. W.D. 2014) (quoting *Hermann v. Heskett*, 403 S.W.3d 136, 142 (Mo. App. E.D. 2013)). If the argument section fails to develop the contention raised in the point relied on, then the point is deemed abandoned. *Id.*

Father's fourth point on appeal is denied.

### Point Five: Whether the Trial Court Erred in Issuing a Protective Order as to Mother's Medical Condition

Father's fifth point on appeal asserts that the trial court erred in issuing a protective order preventing discovery as to Mother's medical condition because "the health of the parties is relevant to the determination of the best interest of the child." Father claims that, because the trial court found in its Judgment that neither Mother nor Father had any apparent health issues that prevented them from caring for the child, he suffered prejudice as discovery could have permitted him to locate contrary evidence.[6]

---

[6]Father's Brief collapses discussion of his fifth point relied on with his sixth point relied on, improvidently believing both to address claims of error involving the admission of evidence. However, Father's fifth point relied

In referencing the "protective order" which is the subject of Father's fifth point relied on, Father includes a citation to the legal file. However, that citation takes us to the *motion* for protective order filed by Mother on June 22, 2012, to protect her medical records. Father acknowledges in his Brief that the legal file omits the court's order, and assures the order will be forthcoming. [Appellant's Brief, p. 58 n.10] The legal file has not been supplemented to include the purported protective order entered by the trial court and about which Father complains. Father, as the appellant, bears the burden of preparing the record on appeal, which must contain "all of the record, proceedings and evidence necessary to the determination of all questions to be presented . . . to the appellate court for decision." Rule 81.12(a), (c). We will not find error in the entry of an order that either does not exist,[7] or has not been provided for our review. Rule 81.12(a) (requiring a copy of any judgment or order appealed from to be included in the record on appeal); *see also Brancato v. Wholesale Tool Co*., 950 S.W.2d 551, 554 (Mo. App. E.D. 1997) ("If a matter complained of is not present in the record on appeal, there is nothing for the court to review.").

Father's Appendix does include an order apparently entered by the trial court on August 1, 2012, addressing interrogatories propounded by Father on Mother relating to health issues.[8] The order directed Mother to answer three of the propounded questions,

on complains of error in the denial of discovery. Father's Brief fails to cite to any cases setting forth the applicable standard of review for claims of error in the denial of discovery in violation of Rule 84.04(e).

[7]Our review of the case docket sheet included in the legal file failed to locate any reference to an order ruling Mother's motion for protective order.

[8]This order is not in the legal file. However, it does have a "time stamp" consistent with other pleadings in the legal file. Ordinarily, documents attached to the brief or included in an appendix but not in the legal file are not considered on appeal. *Moreland v. Div. of Emp't Sec.*, 273 S.W.3d 39, 41 n.1 (Mo. App. W.D. 2008). However, in this case, there is confusion in the record suggesting that the physical order (which was sent by facsimile to the

20

and sustained her objections as to others. This order, however, is not a "protective order" and plainly did not rule Mother's motion for protective order, as that motion sought relief from the obligation to respond to a deposition notice and to a request for production of documents, not to interrogatories. The August 1, 2012 order is not the subject of Father's point on appeal and is thus irrelevant to this appeal.

In any event, Father's Brief broadly argues that he suffered prejudice from the trial court's refusal to allow him to conduct discovery about Mother's medical condition. However, Father never persuasively explains what he expected to discover or how the allegedly denied discovery would have materially affected the merits of this action, rendering reversal of the trial court's judgment inappropriate. *Precision Elec., Inc. v. Ex-Amish Specialties, Inc.*, 400 S.W.3d 802, 812 (Mo. App. W.D. 2013).

Father's fifth point on appeal is denied.

## Point Six: Whether the Trial Court Erred in Admitting Evidence Regarding the Response of Mother's Son to Learning About a Private Investigator

Father's sixth point on appeal argues that the trial court erred in allowing Mother to testify about her son's[9] response to learning that Mother and her children were being followed by a private investigator. Father asserts that the child's reported response to Mother was inadmissible hearsay. Father claims that he suffered prejudice because Mother's son's hearsay statement was considered by the trial court for the truth of the matter asserted, notwithstanding a contrary assurance at trial.

___

parties) may never have been placed in the official court file. The court's docket sheet reflects that an order was made sustaining Mother's objections to Father's medical and mental health questions, but the entry of an order to that effect does not appear on Case.net. The existence of the order was discussed at trial, as Mother's attorney claims never to have received the faxed order, but Father's attorney acknowledged receipt.

[9]Mother's son is not the child who was the subject of the Judgment.

A trial court has considerable discretion in admitting or excluding evidence. *St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 123 (Mo. banc 2013). We will reverse the trial court's decision regarding the admission of evidence only if the trial court abused its discretion. *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration. *Id.* If reasonable persons can differ as to the propriety of the trial court's decision, then it cannot be said that the trial court abused its discretion. *Id.* Improper admission of hearsay evidence constitutes reversible error only if the evidence was prejudicial. *Freight House Lofts Condo Ass'n v. VSI Meter Servs., Inc.*, 402 S.W.3d 586, 593 (Mo. App. W.D. 2013).

Here, Mother's attorney questioned her about the private investigator that Father hired. They had a lengthy exchange in which Mother testified that she recognized the private investigator who testified at trial as the same person who had been following her. Mother's attorney then had the following exchange with Mother:

Q: You said you have a son . . . ?

A: Uh-huh.

Q. Did [your son] see this individual watching your home?

A: Yes.

At that point, Father's attorney objected, arguing that the question called for hearsay. The trial court overruled the objection, finding the question was already asked and answered. Mother's attorney asked whether Mother was concerned about her son's safety. Mother answered in the affirmative. Then, Mother's attorney asked whether her son was

22

concerned, and Mother replied that he was. Following Mother's answer, Father's attorney again objected that the question called for hearsay. Again, the trial court overruled the objection but stated, "I'm not receiving it for the truth of the matter asserted, but for the fact that the statement was made."

On the subject of the private investigator, the Judgment states:

> Father hired a private investigator to follow [the child] for a time. He sat outside Mother's home. Mother *and the children* observed him photographing and videotaping them. *They* were horrified. Grandmother came to live with them during this time. The family members spoke to each other about their fear. Nothing of concern was uncovered by the investigator. The experience of feeling "stalked" by a stranger who was hired by Father put a big dent in Mother's ability to engage in a trust [sic] relationship with Father.

(Emphasis added.) The premise of Father's sixth point on appeal is that the emphasized language of the Judgment reveals that the trial court, contrary to its assurance during Mother's testimony, relied on the son's statements regarding his fear of the private investigator for the truth.

Father's point, even if technically correct, fails to establish reversible error. Though the Judgment mentioned the children's observations and fear, the import of the above referenced paragraph is in its discussion of the impact on *Mother's* ability to trust Father. Without trust between Mother and Father, the trial court reasoned, joint custody would not be feasible. There is no indication in the Judgment that Mother's son's reaction to the private investigator played any role in the trial court's decision to award Mother sole custody of the child. Father suffered no prejudice. *See Freight House Lofts*, 402 S.W.3d at 593 ("'[T]he improper admission of hearsay evidence requires reversal only if

23

such evidence is prejudicial.'" (quoting *Saint Louis Univ. v. Geary,* 321 S.W.3d 282, 291 (Mo. banc 2009))).

Father's sixth point on appeal is denied.

## Mother's Motion on Appeal

Mother, pursuant to Local Rule XXIX, filed a motion to remand to the trial court for determination of attorney's fees and costs on appeal, and we elected to take the motion with the case. Mother asserts that she is entitled to attorney's fees pursuant to section 452.355. The trial court has already made the initial determination to award Mother a portion of her attorney's fees at trial. Accordingly, we sustain Mother's motion and remand this case to the trial court for determination of Mother's fees request.

## Conclusion

We affirm. We remand this matter to the trial court for determination of Mother's request for attorney's fees and costs on appeal.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

24