

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| ADAM W. RACKERS, | ) | |
| | ) | WD79077 |
| Respondent, | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| JENNIFER A. RACKERS, | ) | October 4, 2016 |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**Honorable Daniel Richard Green, Judge**

**Before Division One:**
**Anthony Rex Gabbert, P.J., Thomas H. Newton, and Alok Ahuja, JJ.**

Ms. Jennifer Rackers appeals a judgment awarding her ex-husband Mr. Adam Rackers a 50% Line 11 discount on the Form 14 child-support calculation, denying her request for a right of first refusal when Mr. Rackers is unavailable to exercise his right to visitation, and denying her request for attorney fees. We remand in part and affirm in part.

## Factual and Procedural Background

The marriage of Mr. and Ms. Rackers was dissolved on July 9, 2008. There were two children born of the marriage. The parties were awarded joint legal and physical custody of the minor children with equal custodial time, and Mr. Rackers was ordered to pay Ms. Rackers $833.00 in child support each month.

1

The dissolution was modified on June 27, 2011. In this proceeding, the court reduced the child support payment to $252.00 per month and granted Mr. Rackers a 50% credit on Line 11, finding the credit to be "just and appropriate."[1] After the modification hearing, Ms. Rackers was adjudged disabled by the Social Security Administration as determined in an order dated May 15, 2012.

Ms. Rackers filed her second modification motion on June 17, 2014, alleging a substantial change in circumstances because of her disability award and Mr. Rackers's increased income. During the June 10, 2015, hearing, Ms. Rackers testified that she received $1,068.90 per month in Social Security Disability Income and that $104.90 of that amount was deducted for her Medicare coverage. She also testified that she had a third child not of the marriage. Ms. Rackers testified that she received a monthly payment of $165 for each of her three children from the Social Security Administration. Ms. Rackers testified that Mr. Rackers's income had increased from $2,979.00 per month to $4,168.00 and that he provided health insurance for his two children at the cost of $151.00 per month. On direct examination, Mr. Rackers testified that he earned

---

[1] The June 27, 2011 judgment states,

> Each [party] sought an amendment in the calculation of child support. In arriving at a new child support amount, the Court finds that Petitioner is employed by the Missouri Army National Guard as a civilian employee, and earns a gross monthly income of $2,979.00. Respondent is receiving disability benefits from Standard Insurance Company in the gross monthly amount of $884 dollars, as well as government benefits in the amount of $300 per month and day care assistance of $97 per week. However, the Court, pursuant to the comments associated with Form 14, finds that Respondent's food stamp income and day care assistance are not a portion of her gross monthly income for Form 14 purposes. Petitioner carries health insurance on the minor children at the monthly cost of $151. There was testimony from both parties that each provides all necessities for the minor children when they are in their respective custody. Neither party has significant unduplicated expenses for the minor children that are not identically borne by the other. To that end, the Court finds that the Line 11 credit shown on the attached Court approved Form 14 is just an appropriate. Accordingly, Rule 88 and Form 14 are found to be unjust and inappropriate, in that the Court gives a 50% credit on Line 11, and gives a credit despite Respondent's low income.

2

$23.97 per hour for a 40-hour work week and used these figures to testify to a monthly gross income of $4,168.00.

At trial, counsel for Ms. Rackers presented a Form 14 worksheet indicating that her monthly income was $1,399, the sum of her income check and the Social Security allotment for the two boys. Her proposed Form 14 allowed a credit at Line 2C2 for her third child and included the $165 Social Security payment for that same child at Line 2C3. Ms. Rackers's Form 14 offered no Line 11 credit. Mr. Rackers's counsel objected to the use of Ms. Rackers's Form 14 on the basis that it uses incorrect numbers. The court overruled this objection and indicated that it would also consider the Form 14 offered by Mr. Rackers.

Mr. Rackers presented a proposed Form 14 worksheet indicating his income at $4,168.00 per month, with a credit for health insurance paid, and a 50% Line 11 credit. He further testified that he was current on his child support payments and that there was nothing provided for the children at their mother's home that was not provided by him equally when the children spent their periods of custody at his house.

Ms. Rackers also requested a modification indicating that when Mr. Rackers was away for work during his custodial time with the children, custody should "default" to her, so a third party was not watching the children. Ms. Rackers testified that Mr. Rackers was absent an average of five days per month of his custodial time with the children, and that he was unable to exercise his visitation on those occasions. Conversely, Mr. Rackers testified that he was away "on average less than one" night per month of his custodial time. He explained that instead of leaving the children

3

overnight, he drove home to be with them. In addition, he explained that when he was away the boys stayed with his parents, with whom the children had a good relationship.

Finally, Ms. Rackers presented a bill for legal fees requesting that the court order Mr. Rackers to pay all or part of her legal fees to counsel. Her counsel asked that the trial court use its "own expertise whether the work was necessary by looking at the bills and taking judicial notice of the case." On cross examination, counsel for Mr. Rackers questioned charges for assistance with a traffic ticket and an order of protection, and Ms. Rackers explained that she did not expect Mr. Rackers to pay for anything related to either matter.

At the close of evidence, Ms. Rackers's counsel reminded the court of her request for findings of fact and conclusions of law to be issued. Both parties submitted proposed judgments.

The trial court issued its judgment on September 1, 2015, stating:

1. Father shall pay child support to Mother in the amount of $355.00 per month beginning August 1, 2015. Said increased child support shall continue to be paid via withholding and through the Family Support Payment Center.

2. The custody schedule of the parties as per the 2011 Modification is to continue, same being just, appropriate and in the best interests of the minor children, with the exception that said schedule is modified to accommodate the voluntary changes of the parties, wherein Mother shall have the children on Wednesday and Thursday until 5:00 pm or after school, whichsoever shall first occur, and Father shall have the minor children on Monday and Tuesday until 5:00 pm or after school, whichsoever shall first occur.

3. In all other respects, the Parenting Plan adopted and modified by this Court in its previous Judgments of July 9, 2008, and June 27, 2011, shall remain in full force and effect.
4. Each party shall be responsible for their own attorney's fees. Court costs taxed to the filing party, which is Respondent.

This appeal follows.

**Legal Analysis**

This Court "will uphold the trial court's award of child support unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Nelson v. Nelson*, 25 S.W.3d 511, 520 (Mo. App. W.D. 2000) (citation omitted). "An appellate court will interfere with the trial court's award of child support if the trial court abused its discretion by ordering an amount that is 'against the logic of the circumstances' or 'arbitrary or unreasonable.'" *Id*. (citations omitted). "The trial court's award of child support will not be disturbed on appeal 'unless the evidence is "palpably insufficient" to support it.'" *Id.* (quoting *Allen v. Allen*, 961 S.W.2d 891, 893 (Mo. App. W.D. 1998)).

In the first point, Ms. Rackers argues that the trial court erred in granting Mr. Rackers a 50% discount at Line 11 of Form 14 on the basis that no significant non-duplicated expenses for the minor children existed. She asserts that the comments for use of Line 11 prohibit a discount when the Line 1 income of the parent receiving support was less than $1,700.00 (where the parent has two children), except where one of two specific exceptions is satisfied. Ms. Rackers asserts that this discount was granted in error because the undisputed evidence shows that her Line 1 income was less than $1,700.00, and the evidence does not indicate that either of the exceptions to this income threshold was satisfied in this case. We agree.

We begin our analysis by determining whether the correct values were included in the Form 14 child-support calculation.

In *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo. App. W.D. 1996), this court set forth a two-step procedure for the trial court to follow

5

to determine child support awards in compliance with § 452.340, RSMo 2000 and Rule 88.01. *Ricklefs v. Ricklefs,* 39 S.W.3d 865, 869-70 (Mo. App. W.D. 2001). The Supreme Court approved this procedure in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997). *Id.* In the first step, the trial court "must determine and find for the record," the presumed child support amount under Form 14. *Id.* at 870. In the second step, the trial court, "after considering all relevant factors, must determine whether to rebut the [presumed child support amount] as being unjust or inappropriate."

\*\*\*

In determining the presumed child support amount under the first step of the procedure in *Woolridge*, the trial court can either accept one of the Form 14 calculations submitted by the parties, or reject both parties' Form 14 calculations and prepare its own Form 14…. The trial court must reject a Form 14 calculation if "1) an item is incorrectly included in the calculation; 2) an amount of an item included in the calculation is incorrect; or 3) the mathematical calculation is incorrect." *Woolridge*, 915 S.W.2d at 378. To decide whether the presumed child support amount has been correctly calculated in a Form 14, the trial court is "guided by [Form 14]'s directions for completion and comments for use, and the evidence in the case." *Id.* at 379. On appellate review of the correctness of the presumed child support amount, this court "'review[s] the calculation to ensure that not only [is it] done accurately from a mathematical standpoint, but that the various items and their amounts were properly included in the calculation and supported by substantial evidence.'" *Ricklefs*, 39 S.W.3d at 870.

*McCandless-Glimcher v. Glimcher*, 73 S.W.3d 68, 72-73 (Mo. App. W.D. 2002).

"Although the second step can be performed without a mandatory worksheet or formula, the first step of calculating the presumed [child support] amount using Form 14 is mandatory. Further, the "formula" to be employed and the factors to be considered in calculating the presumed correct child support amount in a Form 14 is not discretionary." *Schumert v. Dreyer*, 481 S.W.3d 885, 888–89 (Mo. App. E.D. 2016) (citations, internal quotation marks, and footnote omitted); *see also, e.g., Scobee ex rel. Roberts v. Scobee*, 360 S.W.3d 336, 342-43 (Mo. App. W.D. 2012).

6

When completing the first step of the procedure, the trial court must determine the appropriate child support amount in compliance with § 452.340.[2] §452.340.10 specifically states that "when a court determines the amount owed by a parent for support provided to a child by another person...the court or director shall use the guidelines established." A "Caveat" specifically addresses the income threshold for a line 11 adjustment, explaining that "an adjustment on line 11 shall not be allowed unless the adjusted monthly gross income of the parent entitled to receive support (line 3) exceeds the amount set forth...for the appropriate number of children." Directions, Comments For Use and Examples for Completion of Form No. 14., (August 9, 2016), http://www.courts.mo.gov/file.jsp?id=29741. The Caveat then provide a table showing that in order to grant a line 11 adjustment, the parent receiving support must receive a monthly gross income of $1,700 if the parent has two children.

The Caveat establishing the income threshold for application of a line 11 adjustment contains two exceptions:

> *Notwithstanding the amounts set forth in the table above, an adjustment may be given if:*
>
> *(1) The parent entitled to receive support is unemployed or underemployed because the expenses of that parent are paid, in whole or in part, by a person with whom that parent cohabits, or*
>
> *(2) The adjusted monthly gross income of the parent obligated to pay support (line 3) less the presumed child support amount(line 12) is equal to or less than the amounts set forth in the table above for the appropriate number of children.*

---

[2] Statutory references are to RSMo 2000, as supplemented, unless otherwise indicated.

7

At trial, Ms. Rackers testified that she receives a monthly Social Security Disability Income of $1,068.90.[3] It is clear that the trial court believed this testimony because its Form 14 recorded her monthly gross income at $1,069. Thus, because Ms. Rackers's gross monthly income is below the $1,700 threshold, the trial court "shall not" allow for a Line 11 adjustment. *See Jeffus v. Jeffus*, 375 S.W.3d 862, 864–65 (Mo. App. W.D. 2012) (unless one of the Caveat's two exceptions is satisfied, a trial court may not award a Line 11 adjustment if the monthly income of the party receiving support falls below the stated threshold).

Mr. Rackers argues that despite her low income, the court was correct in awarding the Line 11 credit because Ms. Rackers lives full-time with her mother and presented conflicting testimony regarding the number of overnights or time that she spent with her boyfriend. After review of the record, however, there is no evidence that Ms. Rackers receives any financial support from her mother or boyfriend. The testimony simply provides conflicting accounts of the amount Ms. Rackers's mother is involved with the children. Moreover, even if the evidence established that Ms. Rackers was living with either her mother or boyfriend, and was receiving financial support from them, this would still not be sufficient to trigger the first exception to the Caveat, because there is no evidence to suggest that Ms. Rackers "is unemployed or underemployed because" of financial support she is receiving. To the contrary, the trial court found that Ms. Rackers is unemployed because she is disabled, *not* because

---

[3] Ms. Rackers further explained that $104.90 was removed from her check monthly for her Medicare expenses. This deduction, however, is not accounted for on the Form 14 calculation. Directions, Comments For Use and Examples For Completion of Form No.14, (August 9, 2016), *http*://www.courts.mo.gov/file.jsp?id=29741.

of financial support she is receiving from a third party. Therefore, the exception on which Mr. Rackers relies does not apply here.

Therefore, after review of the relevant statute, the Form 14 guidelines and the record, it is clear that the trial court's decision to award a Line 11 adjustment despite Ms. Rackers's low income was made in error. The guidelines clearly show that the court shall not grant a Line 11 adjustment when the parent receiving support has two children and receives an adjusted monthly gross income below $1,700, unless one of two exceptions is satisfied. Because the trial court is required to use these guidelines in determining child support and Ms. Rackers's adjusted gross monthly income is recorded as $1,069 on the trial court's Form 14, we remand this modification to the trial court to reverse the Line 11 adjustment awarded to Mr. Rackers. Point one granted.

We recognize that, on remand, the trial court will be required to go to the second step of the *Woolridge* analysis after first determining the correct Presumed Child Support Amount: "after considering all relevant factors, [the court then] must determine whether to rebut the [presumed child support amount] as being unjust or inappropriate." *McCandless-Glimcher*, 73 S.W.3d at 73. The circuit court quoted the following language from its 2011 modification judgment to justify its conclusion that use of the Rule 11 adjustment was unjust and inappropriate in this case:

> There was testimony from both parties that each provides all necessities for the minor children when they are in their respective custody. Neither party has significant unduplicated expenses for the minor children that are not identically borne by the other. To that end, the Court finds that the Line 11 credit shown on the attached Form 14 is just and appropriate. Accordingly, Rule 88 and Form 14 are found to be unjust and inappropriate, in that the Court gives a 50% credit on Line 11, and gives a credit despite Respondent's (Mother's) low income.

9

Thus, the circuit court's judgment found that, because Mr. Rackers would be entitled to the largest permissible Line 11 adjustment (50%) under Comment A to Line 11 and Assumption 12, *if the income threshold stated in the Caveat was ignored*, this justified the court in awarding a 50% adjustment, and ignoring the Caveat's income threshold.

As we have explained above, it was inappropriate for the circuit court to refuse to apply the explicit instructions to Line 11 in calculating the Presumed Child Support Amount, based on its belief that application of the Caveat in the instructions was unjust and inappropriate. Instead, the circuit court was required in step one of the *Woolridge* analysis to *first* determine the Presumed Child Support Amount according to Form 14's guidelines and instructions, and only *thereafter* address whether the PCSA was unjust and inappropriate.

Because this issue will recur on remand, we note that the considerations cited by the trial court to award the 50% Line 11 adjustment to Mr. Rackers would not, standing alone, justify finding a correctly calculated PCSA to be unjust and inappropriate. While no specific worksheet or formula applies to a trial court's discretionary determination whether a Presumed Child Support Amount is unjust or inappropriate, generally a deviation from the PCSA may be appropriate if the circumstances of a particular case are not addressed by Form 14 (such as debt of either parent),[4] if the facts of a particular case are different than the assumptions underlying Form 14's guidelines (for example, where actual child-care expenses are shown to be

---

[4] *See, e.g., Woolridge v. Woolridge*, 915 S.W.2d 372, 279 (Mo. App. W.D. 1996), citing *In re Marriage of Short*, 847 S.W.2d 158, 166 (Mo. App. S.D. 1993).

10

more or less than Form 14's assumptions),[5] or where other particular circumstances of the case justify a departure from the Form 14 guidelines. A trial court may not find a Presumed Child Support Amount to be unjust and inappropriate simply because the court chooses to ignore particular mandatory aspects of the Form 14 calculation. In this case, the trial court's judgment suggests that the trial court chose to ignore the income threshold specified in the Line 11 Caveat simply because a different child support amount would result if the Caveat was ignored (because the court found that Mr. Rackers otherwise met the conditions for a 50% adjustment described in Comment A and Assumption 12). Without additional circumstances justifying a departure from the income thresholds specified in the Line 11 Caveat, it would not be appropriate to rebut the PCSA as unjust and inappropriate on this basis.[6]

In the second point, Ms. Rackers argues that the trial court erred in denying her request to modify the parenting plan so that she would have the children when Mr. Rackers's military orders prevented him from exercising overnight visitation because a modification of visitation must be ordered when the evidence compels the conclusion that it will serve the best interest of the children and a parent is preferred to a non-parent in their placement. Ms. Rackers asserts that the evidence compelled placement

---

[5] *See*, *e.g.*, *Renaut v. Kullman*, 152 S.W.3d 431, 435-36 (Mo. App. W.D. 2005); *Foraker v. Foraker*, 133 S.W.3d 84, 97 (Mo. App. W.D. 2004).

[6] In his briefing, Mr. Rackers also argues that Ms. Rackers waived any objection to the Line 11 adjustment awarded to him, because she did not appeal the 2011 modification judgment, which contained the same adjustment. We disagree. Once the circuit court in 2015 determined that a sufficient change in circumstances had occurred to justify a modification of child support, it was required to correctly calculate the Presumed Child Support Amount, using Form 14 and the circumstances as they existed in 2015. *See*, *e.g.*, *Gerlach v. Adair*, 211 S.W.3d 663, 666 (Mo. App. W.D. 2007) ("The use of Form 14 is mandatory in calculating child support in a modification proceeding."), citing *Wheeler v. Wheeler*, 110 S.W.3d 828, 831 (Mo. App. E.D. 2003). Ms. Rackers's failure to challenge the manner in which the circuit court calculated child support in 2011 did not preclude her from challenging the court's 2015 calculation.

11

with her when Mr. Rackers was unavailable to exercise visitation because of his military orders, and that there was insufficient evidence for the court to conclude that the children should be placed with anyone other than Ms. Rackers during these times.

To review a custody modification, we apply the following standard:

> Upon review of this custody modification proceeding, we will affirm the court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. In reviewing Appellant's claims on appeal, we consider the evidence and reasonable inferences arising therefrom in a light most favorable to the trial court's judgment. Because the trial court is in a better position to assess credibility and resolve disputes in conflicting evidence, we defer to the trial court's assessment and resolution of such matters, keeping in mind that we operate under the presumption that the trial court reviewed all evidence and based its decision on the child's best interests. In fact, "'[t]he trial court's determination in child custody proceedings is given greater deference than in any other type of case.'"

*Wright ex rel. McBath v. Wright,* 129 S.W.3d 882, 884 (Mo. App. W.D. 2004) (internal citations omitted).

Ms. Rackers argues that the trial court did not provide the requested findings of fact and conclusions of law as requested because it did not cite specific evidence in the denial of her request to modify the custody arrangement. The rule, however, simply states that if such findings are requested by a party, "the court may…include in the opinion findings on the controverted material fact issues specified by the party." Rule 73.01. In the initial August 2008 judgment, the court fully explained its reasoning for granting joint physical and legal custody of the minor children. Further, in June 2011, the judgment and decree of modification fully outlines the factors considered in denying the proposed custody schedule and parenting plan.[7] Finally, in the September

---

[7] The June 27, 2011, judgment states the following regarding the modification of the custody schedule and parenting plan:

12

2015 judgment, the motion court stated, "[t]here has not been a substantial or continuing change in circumstances, nor would the best interests of the minor children be served by modifying the joint custody schedule of the minor children with the exception of switching the custodial periods from Monday through Thursday of each week to accommodate the voluntary and agreed upon change instituted by the parties." In addition, it stated, "[i]n all other respects, the Parenting Plan adopted and modified by this Court in its previous Judgments of July 9, 2008, and June 27, 2011, shall remain in full force and effect." Therefore, by explaining that nothing has changed since these factors were considered and denied, the motion court acknowledged their evidence and reasoning that supports the denial of Ms. Rackers's proposed custody modification.

---

1. The Court hereby finds that the current custody schedule for the minor children is just, appropriate and in the best interests of the minor children, and does not modify said schedule from that which was set forth in the Parenting Plan approved by this Court with the Judgment and Decree of Dissolution of Marriage. In rejecting all proposed modifications of periods of custody, the Court has considered the following specific relevant factors:

    a. The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

    b. The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

    c. The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

    d. Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

    e. The child's adjustment to the child's home, school, and community;

    f. The mental and physical health of all individuals involved, including any history of abuse of any individuals involved;

    g. The intention of either parent to relocate the principal residence of the child; and

    h. The wishes of the child as to the child's custodian.

At the June 2015 hearing, Ms. Rackers asked the trial court to modify the parenting plan to grant her preference over anyone else to care for the children when Mr. Rackers is away overnight on military orders. To support this request, Ms. Rackers testified that he is absent for a range of one to five days each month. She further explained that although she has no problem with how Mr. Rackers's parents care for the children when he is unable to exercise his visitation rights "[her] son has been upset because he's tired of feeling like he has three homes instead of just two. He wants to be with his mom or dad." Ms. Rackers provided no additional evidence to support her allegation of Mr. Rackers's missed overnight visits.

In response, Mr. Rackers testified that contrary to Ms. Rackers's testimony, he misses an average of "less than one" overnight with the kids but is usually never away any nights. He also testified that if he has weekend activities he drives home in the evenings to be with the children. He also explained that, if he has to be away overnight, the children stay with his parents and that the children have never complained to him about this arrangement. When asked about his concerns regarding Ms. Rackers's proposal for a first right of refusal to care for the children when he is away overnight, he testified,

> I have several. Mostly because whenever—and this brings back to legal custody—when she thinks that she has the kids, she thinks that it's just her time to do whatever. You know, not—we don't have a cohesive just like with the two weeks gone, well, it's my time so they are doing swim lessons. That's my choice. Well, no, it should be jointly, so she still thinks the same thing as far as, you know, their practices, their baseball, you know, whatever is going on, she'll just, well, I don't feel like doing it that day. I got them, so I'm not going to do it. Same thing with school. So there's no trust there as far as that's going to happen. And she will absolutely, 100 percent lie about whether she's gone out of town or done anything. So I'll be doing something for work and she'll go do something

14

with her boyfriend and have her sister watch them. And I'll find out about it after the fact and not be afforded the same opportunity that she's asking.

"A trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *Denney,* 184 S.W.3d at 114. Thus, the appellate court "give[s] deference to the trial court's determination of the credibility of the witnesses; and the evidence, with all of the inferences flowing therefrom, is viewed in the light most favorable to the judgment." *Id.* After review of the record, we have found no additional evidence to support a claim that the trial court erred in relying on Mr. Rackers's testimony regarding his presence during his visitation and, therefore, supporting a judgment that made no modification to the existing parenting plan.

In her argument for first refusal on appeal, Ms. Rackers compares her request for care preference during a missed overnight visit to third party custody under § 452.375.5. Ms. Rackers asserts that, according to this statute, she should be granted a right of first refusal unless she is deemed unfit or unsuitable to care for her children. Ms. Rackers's argument is, however, misguided because the current parenting plan does not grant custody to a third party on the basis that either parent is unfit or unsuitable to care for the children. In addition, her argument discounts the importance of the children's relationship with their extended family as highlighted in the factors used by the court when determining custody in accordance with the best interests of the child. § 452.375.2(3).

In *Wennihan v. Wennihan*, 452 S.W.3d 723 (Mo. App. W.D. 2015), this Court considered a similar right of first refusal issue. As here, this Court noted that the mother in *Wennihan*, "cites no authority indicating that it would be reversible error for a trial court to entirely fail to include a right of first refusal provision in its parenting

15

plan." *Id.* at 738. Thus, we ruled that "such micromanagement was unnecessary" and that "we simply cannot deem it to be reversible error for the trial court not to go as far as desired by Mother in drafting this provision." *Id.* Similarly, we cannot require such micromanagement in the present case because the finding excluding a first refusal provision is supported by the evidence and Ms. Rackers's inability to provide authority categorizing the exclusion as erroneous.

In summation, § 452.400.2(1) states, "[t]he court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his or her emotional development." The trial court aptly stated that the best interests of the children would not be served by modifying the joint custody to grant the mother a first right of refusal. Furthermore, we presume that the trial court considered all of the evidence and based its decision on the child's best interest. *Wright ex. rel. McBath,* 129 S.W.3d at 884. After reviewing the record in the light most favorable to the judgment, it is clear that the trial court did not err in denying the request for a change to accommodate the alleged periods where Mr. Rackers is unable to exercise his overnight custodial time. Point two is denied.

In the third and final point, Ms. Rackers argues that the trial court erred in denying her request for attorney fees on the basis that there were no legitimate grounds for granting them after considering all relevant circumstances. Ms. Rackers asserts that her case had merit because the relevant evidence related to these grounds compels an award of attorney fees by showing that she did not have the financial resources to

16

pay her attorney fees while Mr. Rackers did. In addition, she asserts that an award was compelled because the evidence showed that Mr. Rackers "was guilty of misconduct related to discovery responses during the litigation that materially affected the evidence before the trial court concerning a central issue."

Regarding attorney fees,

> As a general rule, parties to a domestic relations case are responsible for paying their own attorney's fees. A trial court is permitted, although not required, to award attorney's fees under section 452.355.1. A trial court is given considerable discretion in awarding attorney's fees and an award of attorney's fees will be overturned only upon showing an abuse of discretion. "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice."

> When awarding attorney's fees, the trial court must comply with section 452.355. A trial court may award attorney's fees only after considering all relevant factors, including the financial resources of both parties. The relevant factors will balance differently in each case. "A court is always required to consider the financial resources of both parties before deciding a request for attorney fees. In the absence of evidence as to the parties' financial resources, an award of attorney fees cannot be supported."

> Detailed or extensive information regarding the parties' financial resources is not required; information adduced from testimony as opposed to formal statements filed with the court is sufficient. While detailed formal information regarding the parties' financial resources is not necessary, evidence must have been presented from which the court can draw on in considering the relevant factors.

*Alberswerth v. Alberswerth*, 184 S.W.3d 81, 93-94 (Mo. App. W.D. 2006) (internal citations omitted).

Section 452.355.1 states,

> Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for

17

the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered costs incurred prior to the commencement of the proceeding and after entry of a final judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in the attorney's name.

This statute directly follows the Missouri rule that "attorney's fees are ordinarily recoverable only when authorized by statute or contract, when a court of equity finds it necessary to award them in order to balance benefits, or when they are incurred because of involvement in collateral litigation." *Forsythe v. Starnes*, 554 S.W.2d 100, 111 (Mo. App. 1977). Further, "[t]he party requesting an award of attorney fees in a dissolution action has the burden of proving his or her entitlement to such an award." *Davis v. Schmidt*, 210 S.W.3d 494, 512 (Mo. App. W.D. 2007). The trial court stated in its judgment that "[t]here are no legitimate grounds for the Court to deviate from the general rule that each party is to be responsible for their own attorney's fees, and Mother's request for Father to pay her attorney's fees is denied." Accordingly, we must grant the trial court discretion in its denial of attorney fees here, unless the decision was so arbitrary as to shock one's sense of justice.

Ms. Rackers asserts that the court did not consider her financial resources in denying her attorney fee request. She argues that the court acknowledged her disability, stating that she "is unable to earn income over and above [the $1,068 per month] which is paid to her via her disability" and failed to consider her third child in terms of her financial resources because she is not entitled to a Line 2(c)(1) credit for her. She asserts that because the court acknowledged both her disability income and Mr. Rackers's monthly income of $4,168, "the numbers and the situation spoke for themselves, and contrary to the trial court's finding, the undisputed evidence of the

18

financial situation of the parties constituted one of the legitimate grounds for an award of attorney fees to [Ms. Rackers]." Ms. Rackers fails to provide any authority demonstrating why she is entitled to attorney fees on this basis. Conversely, "the fact that one party earns more than the other, standing alone, does not compel an award of attorney fees." *Ethridge v. Ethridge*, 239 S.W.3d 676, 684 (Mo. App. E.D. 2007) (quoting *Scott v. Scott*, 144 S.W.3d 921, 923 (Mo. App. S.D. 2004)). Therefore, although the financial resources of each party should be considered, the trial court's awareness of these resources does not compel an award of attorney fees.

Ms. Rackers also asserts that Mr. Rackers failed to file any income and expense statements and failed to answer specific interrogatories and requests for production of documents. She asserts that she was prejudiced by this failure because it left the record devoid of substantial evidence concerning the Line 11 issue. "[A] party's actions during the pendency of litigation may be considered in determining whether to make an award for attorney's fees, especially when those fees were the result of the other party's conduct." *Bryant v. Bryant*, 351 S.W.3d 681, 693 (Mo. App. E.D. 2011) (quoting *In re Marriage of Cornella*, 355 S.W.3d 545, 547 (Mo. App. S.D. 2011)). According to the record, the first time the failure to file any income statements was brought to Mr. Rackers's attention was at the filing of Ms. Rackers's motion in limine. In addition, Mr. Rackers provided objections to discovery requests six months before trial. Ms. Rackers, however, declined to request

19

relief for these objections under Rule 61.01 as required.[8]  Because she failed to use the

procedures set forth in Rule 61.01, we must defer to the trial court's determination that

this discovery discrepancy did not constitute a legitimate ground to award Ms. Rackers

attorney fees.

---

[8] Rule 57.01(e) states, "[t]he party submitting the interrogatory may move for an order under Rule 61.01(b) with respect to any objection to or other failure to answer an interrogatory."  In addition, Rule 58.01(e) states, "[t]he party submitting the request may move for an order under Rule 61.01(d) with respect to any objection or other failure to respond to the request or any part thereof or any failure to permit inspection as requested."

Rule 61.01 states,

> (b) **Failure to Answer Interrogatories.**  If a party fails to answer interrogatories or file objections thereto within the time provided by law, or if objections are filed thereto which are thereafter overruled and the interrogatories are not timely answered, the court may, upon motion and reasonable notice to other parties, make such orders in regard to the failure as are just and among others the following:

> (1)  An order striking pleadings or parts thereof, or dismissing the action or proceeding or any part thereof, or render a judgment by default against the disobedient party.

> (2) Upon the showing of reasonable excuse, the court may grant the party failing to answer the interrogatories additional time to file answers but such order shall provide that if the party fails to answer the interrogatories within the additional time allowed, the pleadings of such party shall be stricken or the action be dismissed or that a default judgment shall be rendered against the disobedient party.
> …
> (d) **Failure to Produce Documents, and Things or to Permit Inspection.**  If a party fails to respond that inspection will be permitted as requested, fails to permit inspection, or fails to produce documents and tangible things as requested under Rule 58.01, or timely files objections thereto that are thereafter overruled and the documents and things are not timely produced or inspection thereafter is not timely permitted, the court may, upon motion and reasonable notice to other parties, make such orders in regard to the failure as are just and among others the following:

> (1)  An order refusing to allow the disobedient party to support or oppose designated claims or defenses or prohibit the disobedient party from introducing designated matters in evidence.

> (2)  An order striking pleadings or parts thereof or staying further proceedings until the order is obeyed or dismissing the action or proceeding or any part thereof or, rendering a judgment by default against the disobedient party.

> (3)  An order treating as a contempt of court the failure to obey.

> (4) An order requiring the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

20

Finally, we find no reason to disturb the trial court's award of attorney fees on the basis of merit. Because we upheld the trial court's judgment on Ms. Rackers's second point, we find her claims without merit and will not disturb the trial court's award. Therefore, we do not find that the trial court's award denying Ms. Rackers's request for attorney fees constitutes an abuse of discretion. Point three is denied.

## Conclusion

The trial court did err in granting the Line 11 credit because Ms. Rackers's income falls below the required threshold. The trial court did not err in denying Ms. Rackers's request for first refusal rights when Mr. Rackers is away during his overnight custody time, or in denying her request for attorney fees. The trial court's judgment is supported by the substantial weight of the evidence, and no abuse of discretion was shown. We remand in part and affirm in part.

/s/ *Thomas H. Newton*
Thomas H. Newton, Judge

Gabbert, P.J., and Ahuja, J. concur.

21