Jerry Anthony FESSLER, Appellant,

v.

Kerri Joann MCGOVERN, Respondent.

WD 80056

Missouri Court of Appeals,
Western District.

OPINION FILED: August 1, 2017

Christopher M. Rohrer, Osage Beach, MO, for appellant.

Kerri J. McGovern, Respondent pro se.

Before Division Three: Álok Ahuja, Presiding Judge, Thomas H. Newton, Judge and Cynthia L. Martin, Judge

Cynthia L. Martin, Judge

Jerry Fessler ("Fessler") appeals from the trial court's judgment declaring paternity, establishing child custody, and ordering child support for the parties' minor child ("Child"). Fessler presents two points on appeal. First, Fessler argues that the trial court erred in awarding Kerri McGovern ("McGovern"), the Child's mother, sole physical custody because that award is contrary to section 452.375[1] and is not supported by the evidence presented at trial and disregarded his proposed parenting plan. Second, Fessler claims that the trial court erred in its calculation of child support because, in making its calculation, the trial court failed to use the parties' actual gross monthly income. We affirm in part, and reverse and remand in part.

## Factual and Procedural Background[2]

Fessler and McGovern met in November 2006, and began dating shortly thereafter. In 2008, Fessler and McGovern began living together in Fessler's Marceline, Missouri home, but they never married. McGovern gave birth to the Child on September 8, 2010. Fessler was present for the birth and executed an affidavit acknowledging his paternity of the Child. Fessler, McGovern, and the Child resided together in Marceline until February 2011 when Fessler and McGovern terminated their relationship. When Fessler and McGovern reconciled in December 2011, McGovern and the Child moved back into Fessler's home and continued to reside there until January 2013 when the parties again separated. At the time the trial court entered its judgment, Fessler resided in Marceline, and McGovern resided in Jefferson City, Missouri with the Child.

In September 2015, Fessler filed a petition ("Petition") seeking the establishment of paternity of the Child, a custody order for the Child, and a support order for the Child. Fessler's Petition sought joint legal and joint physical custody of the Child. Fessler's parenting plan proposed that Fessler and McGovern have joint physical

[1]. The legislature amended section 452.375 in 2016, with those amendments taking effect on August 28, 2016. Fessler filed the petition for the establishment of orders for child custody and support in September 2015, and the trial court entered judgment on May 17, 2016. Thus, all references to section 452.375 are to the previous version of the statute, which took effect on August 28, 2011.

All other statutory references are to RSMo 2016 unless otherwise indicated.

[2]. We view the facts in the light most favorable to the trial court's judgment. *Hall v. Utley*, 443 S.W.3d 696, 699 n.1 (Mo. App. W.D. 2014).

custody of the Child, with Fessler having parenting time on the first, third, and when applicable, the fifth weekends of every month from 6:00 p.m. on Friday to 6:00 p.m. on Sunday. Fessler's parenting plan further proposed that Fessler have parenting time with the Child four weeks each summer, and proposed a holiday schedule for physical custody of the Child. Finally, Fessler's proposed parenting plan provided that "[n]either parent shall use nor allow others to use, in the presence of the child, any illegal controlled substance; and neither party shall be or allow others to be intoxicated in the presence of the child."

McGovern filed an answer and counter-petition ("Counter-Petition") seeking a declaration of paternity and orders for the custody, visitation, and support of the Child. McGovern's parenting plan proposed that McGovern would have sole legal and sole physical custody of the Child and proposed that Fessler would have supervised visitation every other Saturday from 12:00 p.m. to 3:00 p.m. for the first six months; visitation every other Saturday from 8:00 a.m. to 5:00 p.m. for the following six months; and visitation every other weekend from 6:00 p.m. on Friday until 6:00 p.m. on Sunday thereafter. McGovern's proposed parenting plan required Fessler to "be sober and not smell of alcohol when he arrives to pick up" the Child. McGovern also filed a motion for appointment of a guardian ad litem to represent the interests of the Child, which the trial court granted.

A trial was held over the course of two days in May 2016. Fessler, McGovern, Fessler's two adult daughters, and McGovern's mother testified. The bulk of the testimony concerned Fessler's alcohol use and relationship with the Child. McGovern testified that she believed that Fessler was unfit as a custodian for the Child because he consumes alcohol on a daily basis to the point that he is unable to care for the Child. McGovern testified that, when she lived with Fessler, he drank alcohol at the local Eagles Lodge every day after work and then would drive home before passing out after a night of drinking. McGovern testified that, on separate occasions, Fessler had passed out in the kitchen, on a recliner, and in the garage while sitting in his idling truck. McGovern recounted one time when Fessler passed out in the bathtub while the water was running, resulting in the bathroom flooding. McGovern testified that she is concerned that Fessler would not wake up in the middle of the night to take care of the Child, who has difficulty sleeping through the night.

Fessler testified that he drank the heaviest when he was in a relationship with McGovern but that he never drank so much that it affected his daily obligations, including work. Fessler further testified that he has never been convicted of alcohol-related crimes. Fessler admitted, however, that he had previously operated a motor vehicle after consuming alcohol. Fessler testified that, at the time of the trial, he drank less than he did when he lived with McGovern. Nonetheless, Fessler admitted that he drank alcohol at the local Eagles Lodge nearly every day in the week preceding the trial. Fessler further testified that he has never consumed alcohol during his visits with the Child, which take place on the weekends when McGovern has military drill duties because McGovern's mother, with whom the Child stays in Marceline, allows Fessler to visit the Child during the day. Each of Fessler's adult daughters testified that they have never seen Fessler drinking around the Child. The Child had only one overnight visit with Fessler during times when Fessler and McGovern were separated.

With respect to Fessler's use of alcohol, the guardian ad litem testified:

I've spoken to most of the people who have testified here today, additional people, including friends and family of both parties, and there is a consistency that alcohol has been a big part of both Mr. Fessler and Ms. McGovern's life when they were together and before [the Child] was born. [D]efinitely after [the Child] was born, Ms. McGovern has greatly decreased her alcohol intake and recently within the last six to eight months Mr. Fessler has ... decreased his alcohol intake, though certainly based on the testimony, you know, his own testimony today, still drinking on a nightly basis if he doesn't have [the Child] with him. I found no evidence of him drinking when [the Child] is with him.

The guardian ad litem testified that she was concerned about how the Child would adjust to overnight visits at Fessler's home due to the Child's sleep difficulties. The guardian ad litem recommended easing into overnight visits by starting with longer daytime visits followed by one overnight every other weekend before full weekend visits.

The trial court issued its judgment ("Judgment") declaring Fessler to be the natural father of the Child, and ordering visitation and support. The trial court found that it is in the best interest of the Child for Fessler and McGovern to have joint legal custody and for McGovern to have sole physical custody subject to the arrangement set forth in the parenting plan. The parenting plan adopted by the trial court provided that, for the first six months, Fessler's visits with the Child would occur on the first and third Saturday of each month from 8:00 a.m. to 5:00 p.m.[3] Thereafter, Fessler's visits would occur on the first and third weekends of each month from 6:00 p.m. on Friday until 6:00 p.m. on Sunday. The parenting plan also provided that Fessler is entitled to two uninterrupted weeks for summer visitation. The parenting plan stipulated that Fessler "must be sober and not smell of alcohol when he arrives to pick up" the Child.

The trial court found that Fessler has an approximate gross monthly income of $5,478.00, and that McGovern has an approximate gross monthly income of $3,840.00. The trial court used these figures to calculate a presumed child support amount of $1,039.00 to be paid by Fessler. The trial court rejected the presumed child support amount as unjust and inappropriate. The trial court ordered Fessler to pay $659.00 per month in child support beginning August 1, 2016, with that amount decreasing to $547.00 per month on January 1, 2017.

Fessler appeals.

### Standard of Review

We review the trial court's judgment in determining child custody and in determining child support using the same standard for all court-tried cases. *Shields v. Epanty*, 503 S.W.3d 227, 231 (Mo. App. W.D. 2016); *Hall v. Utley*, 443 S.W.3d 696, 702 (Mo. App. W.D. 2014). "We view the evidence in the light most favorable to the circuit court's judgment and will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Robertson v. Nelson*, 502 S.W.3d 627, 632-33 (Mo. App. W.D. 2016). We view the evidence and all reasonable inferences drawn therefrom in the

---

**3.** Fessler's Brief asserts the trial court ordered that the Saturday visits take place in a counselor's office in Jefferson City. Neither the Judgment nor the parenting plan adopted by the trial court placed this limitation on Fessler's Saturday visits.

light most favorable to the trial court's judgment and disregard all contrary evidence and inferences. *Hall*, 443 S.W.3d at 703.

### Analysis

Fessler raises two points on appeal. We discuss his points separately.

### Point One:   Physical Custody Award

■ Fessler's first point on appeal challenges the trial court's award of sole physical custody to McGovern as contrary to section 452.375 and not supported by the evidence. Fessler asserts that, in considering the eight factors set forth in section 452.375.2 for determining custody, the trial court drew inferences that were unsupported by the evidence in that the trial court made its decision based on what the trial court characterized as "evidence of [Fessler's] continued use of alcohol on an almost daily basis and his willingness to drive while under the influence on a daily basis." Fessler claims that there was no substantial evidence that he is frequently impaired, drives while impaired, or that his drinking habits negatively affect the Child. Further, Fessler claims that the trial court disregarded, without considering, Fessler's proposed parenting plan.

Section 452.375.2 requires the trial court to consider the following eight factors when determining custody in accordance with the best interests of the child:

(1)   The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2)   The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3)   The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4)   Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5)   The child's adjustment to the child's home, school, and community;

(6)   The mental and physical health of all individuals, including any history of abuse of any individuals involved....;

(7)   The intention of either parent to relocate the principal residence of the child; and

(8)   The wishes of the child as to the child's custodian.

The trial court's consideration of these factors in the Judgment was straightforward and resulted in a determination that joint legal custody should be awarded, but sole physical custody should be awarded to McGovern, with a "step-up" approach to visitation for Fessler. The Judgment's conclusions with regard to the award of sole physical custody to McGovern and "step-up" visitation for Fessler referred to evidence "of the parties' alcohol consumption, both past and present;" "the minor child's difficulty with sleeping;" "the lack of overnights exercised by [Fessler] in the past;" and "evidence of [Fessler's] continued use of alcohol on an almost daily basis and his willingness to drive while under the influence on a daily basis." The trial court found that awarding sole physical custody to McGovern and a "step-up" approach to Fessler's visitation would allow both parents frequent contact with the Child while simultaneously allowing the Child to adjust to spending overnights with Fessler.

Fessler's point on appeal argues that the physical custody award and visitation schedule are not supported by the evidence because "the trial court based its decision on [Fessler's] consumption of alcohol during times the [Child] was not pres-

ent." In making this argument, Fessler relies on his own testimony, which established that he never drank so much that it affected his daily obligations, that he had never been convicted of alcohol-related crimes, and that he never drank when in the presence of the Child.

Fessler's argument ignores other evidence before the trial court. Fessler himself testified that, in the week leading up to the trial, he drank alcohol at the local Eagles Lodge nearly every day. Fessler also admitted to operating a motor vehicle after consuming alcohol. Further, McGovern testified that, when she lived with Fessler, he would drink every evening, drive home, and then pass out. From this evidence, the trial court could infer that Fessler's drinking habits would jeopardize the Child during his parenting time, either because he would pass out and not be able to wake up when the Child had difficulty sleeping or because he would drive while impaired. Fessler's own testimony combined with McGovern's testimony constitutes substantial evidence to support the trial court's conclusion that he is frequently impaired, drives while impaired, and that his drinking habits negatively affect the Child.

■ Moreover, Fessler's first point on appeal ignores that the trial court's decision to award sole physical custody to McGovern and "step-up" visitation to Fessler did not rely solely on Father's drinking habits. The judgment articulates several other factors that influenced the trial court's decision, none of which are raised in Fessler's point relied on.[4] Father's first point relied on is denied insofar as Fessler complains about the award of sole physical custody to McGovern.

■ Fessler also complains in his point on appeal that the trial court improperly disregarded Fessler's proposed parenting plan, and as a result, failed, in violation of section 452.375.9, to include a schedule for parenting time for holidays and other special events enumerated in section 452.310.8.[5] The trial court found that Fessler's proposed parenting plan "only requested limited visitation in [the] form of overnight visits every other weekend." This is plainly erroneous, as Fessler's proposed parenting plan included a schedule for holidays and special events. Even had it not, we would nonetheless find that the trial court committed reversible error by failing to include a schedule for holidays

---

4. The argument portion of Fessler's brief argues that there was no substantial evidence that the Child had "sleep issues" because there was no medical evidence offered and that there was no substantial evidence that Fessler was not capable of addressing the issue if the Child stayed at his house overnight. [Appellant's Brief, p. 19] First, we note that this alleged error fails to comply with the requirement set forth in Rule 84.04(e) that the argument under each point be fairly encompassed by that point relied on. "We do not review arguments and issues raised in the argument under a point that are not fairly encompassed by that point." *Fesenmeyer v. Land Bank of Kansas City*, 453 S.W.3d 271, 274 (Mo. App. W.D. 2014). Second, even if this argument were encompassed in Fessler's point relied on, the testimony of McGovern

and her mother established that the Child had difficulty sleeping through the night, and Fessler has cited no authority that requires medical testimony to establish that a Child has sleep issues. Further, McGovern's testimony established that Fessler has drank alcohol to the point of passing out once home, a fact that Fessler admitted in his own testimony.

5. The legislature amended section 452.310 in 2016, with those amendments taking effect on August 28, 2016. Fessler filed the petition for the establishment of orders for child custody and support in September 2015, and the trial court entered judgment on May 17, 2016. Thus, all references to section 452.310 are to the previous version of the statute, which took effect on August 28, 2009.

and other special events in its parenting plan.

■ Section 452.375.9 requires any judgment providing for custody to include a specific written parenting plan setting forth the terms of the parenting arrangement as specified in section 452.310.8.[6] Section 452.310.8(1) requires the parenting plan to include:

A specific written schedule detailing the custody, visitation and residential time for each child with each party including:

(a) Major holidays stating which holidays a party has each year;

(b) School holidays for school-age children;

(c) The child's birthday, Mother's Day and Father's Day

(d) Weekday and weekend schedules and for school-age children how the winter, spring, summer and other vacation from school will be spent;

(e) The times and places for transfer of the child between the parties in connection with the residential schedule;

(f) A plan for sharing transportation duties associated with the residential schedule;

(g) Appropriate times for telephone access;

(h) Suggested procedures for notifying the other party when a party requests a temporary variation from the residential schedule;

(i) Any suggested restrictions or limitations on access to a party and the reasons such restrictions are requested . . . .

"A parenting plan that complies with section [452.310.8] is required to 'prevent courts from being clogged with minor custody and visitation disputes.'" *Alred v. Alred*, 291 S.W.3d 328, 335-36 (Mo. App. S.D. 2009) (quoting *Davidson v. Fisher*, 96 S.W.3d 160, 166 (Mo. App. W.D. 2003)). The trial court is not free to disregard any of these enumerated events so that the failure of the trial court to include all enumerated events in the parenting plan is reversible error. *Wennihan v. Wennihan*, 452 S.W.3d 723, 737 (Mo. App. W.D. 2015). The trial court failed to include a schedule for holidays and other special events in the parenting plan it adopted. Thus, the trial court committed reversible error.

Fessler's first point on appeal is granted insofar as it alleges error because the parenting plan adopted by the trial court failed to include a schedule that covered holidays and special occasions.

### Point Two:  Child Support Award

Fessler's second point on appeal argues that the trial court erred in calculating

---

**6.** The version of section 452.375.9 applicable on the date of the Judgment requires the parenting plan adopted by the trial court to include "the terms of such parenting plan arrangements specified in subsection 7 of section 452.310." In 2009, the legislature amended section 452.310 to add a new subsection 7, which is unrelated to parenting plans. What became subsection 8 of section 452.310 referenced the requirements for a parenting plan. The legislature neglected, however, to contemporaneously amend the cross-reference to section 452.310 which appears in section 452.375.9. Although section 452.375.9 continued to refer to section 452.310.7, the legislature's clear intention was to require parenting plans to include the terms set forth in section 452.310.8. To hold otherwise would be to adhere to a hypertechnical reading of section 452.375.9. We have found, in fact, that a parenting plan adopted by the trial court erroneously failed to include the terms set forth in section 452.310.8, even though at that time section 452.375.9 still technically cross-referenced section 452.310.7. *See, e.g., Wennihan v. Wennihan*, 452 S.W.3d 723, 737 (Mo. App. W.D. 2015). The legislature's 2016 amendment of section 452.375.9 corrected the mistaken cross-reference by stating that a parenting plan must set forth the terms as specified in subsection 8 of section 452.310.

child support because it relied on gross monthly income figures that are not supported by the evidence. Fessler argues that the trial court's Form 14 used $3,840.00 for McGovern's gross monthly income and $5,478.00 for his gross monthly income, though neither amount is supported by the evidence.

The trial court must follow a two-step procedure when determining child support awards in compliance with section 452.340 [7] and Rule 88.01. *Rackers v. Rackers*, 500 S.W.3d 328, 334 (Mo. App. W.D. 2016). First, the trial court must determine the presumed child support amount under Form 14. *Id.* In doing so, the trial court may either accept one of the Form 14 calculations provided by the parties or prepare its own Form 14. *Id.* Second, the trial court must, after considering all relevant factors, determine whether to rebut the presumed child support amount as unjust or inappropriate. *Id.* When we review whether the trial court correctly determined the presumed child support amount, we "review[ ] the calculation to ensure that not only it is done accurately from a mathematical standpoint, but that the various items and their amounts were properly included in the calculation and supported by substantial evidence." *Bond v. Bond*, 77 S.W.3d 7, 11 (Mo. App. E.D. 2002).

Here, the trial court's child support award was based on its Form 14, which reflected that Fessler has an approximate monthly income of $5,478.00 and that McGovern has an approximate monthly income of $3,840.00.

The evidence presented at trial regarding the parties' income included, in the form of exhibits: (1) Fessler's income and expense statement; (2) Fessler's income tax returns; (3) Fessler's pay stubs; (4) the Form 14 completed by Fessler; (5) McGovern's pay stubs; (6) the Form 14 completed by McGovern; and (7) McGovern's original and amended income and expense statements filed prior to trial. In addition, both parties testified about their gross income. McGovern testified that her gross income is $2,601.96 a pay period (or $5,203.92 a month). Fessler generally identified his tax returns and pay stubs before they were admitted into evidence, but did not testify about the income reflected in those exhibits.

The trial court found Fessler's monthly gross income was $5,478.00. Though this amount is inconsistent with Fessler's Form 14 (which reflects his gross monthly income as $4,980.00), and with Fessler's income and expense statement (which reflects his gross monthly income as $3,708.44), it is not inconsistent with the amount McGovern included on her Form 14 as Fessler's gross monthly income ($5,478.00). Fessler has not deposited his pay stubs or tax returns with this court, though they were admitted at trial. It is the responsibility of the appellant to deposit exhibits necessary to the determination of the appeal with the appellate court. Rule 81.16(a). "When an exhibit is not filed with the appellate court, the intendment and content of the exhibit will be taken, as favorable to the trial court's ruling and as unfavorable to appellant." *In re Adoption of C.M.*, 414 S.W.3d 622, 672 n.85 (Mo. App. S.D. 2013). We cannot say that no evidence supported the trial court's conclu-

---

7. The legislature amended section 452.340 in 2016, with those amendments taking effect on August 28, 2016. Fessler filed the petition for the establishment of orders for child custody and support in September 2015, and the trial court entered judgment on May 17, 2016. Thus, all references to section 452.340 are to the previous version of the statute, which took effect on August 28, 2011.

sion that Fessler's gross monthly income was $5,478.00.

We are concerned, however, about the evidentiary support for McGovern's gross monthly income as calculated by the trial court. The trial court found that McGovern's gross monthly income was $3,840.00. This was the amount McGovern reflected as her gross monthly income on the proposed Form 14 she filed with the court on May 10, 2016. On the same day, McGovern filed an income and expense statement that showed her gross monthly income to be $3,672.00. However, McGovern filed an amended income and expense statement on May 16, 2016, which reflected her gross monthly income as $5,359.98. McGovern testified at trial that her gross monthly income was $5,203.92. Fessler's proposed Form 14 attributed a gross monthly income to McGovern of $5,360.00, an amount very close to McGovern's amended income and expense statement and trial testimony. Other than McGovern's proposed Form 14, which appears plainly to have been modified by McGovern's subsequently filed amended income and expense statement and trial testimony, there is no evidence which supports the trial court's conclusion that McGovern's gross monthly income was $3,840.00.[8]

Fessler's second point on appeal is denied insofar as he complains about the amount of gross monthly income attributed to him, but granted with respect to the gross monthly income attributed to McGovern.

### Conclusion

We reverse the Judgment in part. This cause is remanded to the trial court to modify its parenting plan to account for all holidays and other special occasions as required by section 452.310.8. This cause is also remanded to the trial court to recalculate and order the payment of child support by first calculating the presumed child support amount using the gross monthly income attributed to Fessler in the original Judgment, and a gross monthly income for McGovern that is supported by the evidence submitted after McGovern's proposed Form 14 was first filed. The newly calculated presumed child support amount will remain subject to the trial court's authority to determinate that the amount is unjust and inappropriate. In all other respects, the Judgment is affirmed.

All concur

---

8. Fessler failed to deposit McGovern's pay stubs with this court. Though we ordinarily would construe those documents in a manner contrary to his interests (*see* footnote 8, *supra*), McGovern's trial testimony addressed the pay stubs, and indicated what they represented in terms of her gross monthly income.